NORTHERN NATURAL GAS COMPANY, appellant, v. MARTIN A. LAUTERBACH et al., members of the Iowa State Tax Commission, and IOWA STATE TAX COM-MISSION, appellees.

No. 49830.

(Reported in 100 N.W.2d 908)

FEBRUARY 9, 1960.

REHEARING DENIED MAY 6, 1960.

H. R. Duncan, Evans, Duncan, Jones, Hughes & Riley, of Des Moines, and Ralph P. Blodgett, of Omaha, Nebraska, for appellant.

Norman Erbe, Attorney General, James M. Barrett, Special Counsel for the State of Iowa, Richard Brinkman, Assistant Attorney General of the State of Iowa, of Des Moines, for appellees.

GARRETT, J.—Northern Natural Gas Company, a corporation, appellant, brought this action against the Iowa State Tax Commission and the members thereof, appellees, to recover certain use taxes paid under protest by the corporation. Involved

is the construction to be placed upon section 423.4(2) of the 1950 Code of Iowa which relates to certain exemptions from the use tax.

Appellant operates a system of pipe lines which transport its own natural gas from Texas, Oklahoma and Kansas into Iowa and other states. It sells some gas at retail to farmers and corporations along its lines but mainly it sells at wholesale.

The Iowa State Tax Commission, on September 27, 1956, assessed a use tax and penalty on personal property purchased by appellant outside of Iowa and used in this state to augment, repair and operate its interstate transportation system.

The property purchased consisted largely of steel pipe to carry the gas and compression engines to accelerate its movement. The assessment covered the period from July 1, 1952 to June 30, 1953, and was for $39,998.62 tax and $18,516.67 penalty. The company appealed from the assessment to the district court on the ground the assessed property was exempt from the use tax under the exemption statute referred to. The trial court held the assessment valid and from the decision the company has appealed.

I. Section 423.2 provides: "An excise tax is hereby imposed on the use in this state of tangible personal property purchased * * * for use in this state, at the rate of two percent of the purchase price of such property." Chapter 422 provides for a sales tax of two per cent. This law was enacted in 1934.

The Use Tax Act became effective in 1937 and so far as applicable here has not been changed or modified since its enactment. It is a revenue measure designed to supplement and protect the sales tax by removing any incentive to purchase outside of Iowa to escape such tax and to protect Iowa dealers by placing their sales upon a tax equality with those of outside competitors. Peoples Gas & Electric Co. v. State Tax Comm., 238 Iowa 1369, 28 N.W.2d 799.

"The purpose of the use-tax law is indirectly to tax sales that cannot be directly taxed under the Iowa sales-tax law. * * * The tax is on the use but it presupposes a prior sale. The tax serves the double purpose of producing revenue that otherwise might not be available and of furnishing some measure of

protection to Iowa dealers from competition with outside vendors not subject to liability for sales tax. See discussion in Henneford v. Silas Mason Co., 300 U. S. 577, 581, 57 S. Ct. 524, 526, 81 L. Ed. 814, quoted in Zoller Brewing Co. v. State Tax Commission, 232 Iowa 1104, 1106, 5 N.W.2d 643, 6 N.W.2d 843." Dain Mfg. Co. v. Iowa State Tax Comm., 237 Iowa 531, 534, 22 N.W.2d 786, 788.

See also Morrison-Knudsen Co., Inc., v. State Tax Comm., 242 Iowa 33, 44 N.W.2d 449, 41 A. L. R.2d 523.

It is conceded by appellant that the property involved herein would have been subject to the sales tax had it been purchased in this state and the tax would no doubt have been paid without a question being raised. This is because there is no statutory exemption from the sales tax on property purchased in Iowa for immediate use in interstate transportation or commerce.

II. The question is not whether the state has a right to assess a use tax—such right is conceded. The question for determination is: Was the property assessed exempt from the use tax under section 423.4(2) which provides for the exemption from the use tax of property used in interstate transportation or interstate commerce? Appellant, in its brief, states:

"The property thus assessed and the subject of this appeal consists of pipe; valves and fittings; welding rods; paint, coating and wrapping; metering—regulating equipment; cooling tower coils; absorption oil and gas cleaners; gas compressor engines and component parts; natural gas fuel and lubricating oil, all of which was used to transport Northern gas into and out of Iowa."

No doubt most, if not all, of the property taxed was converted to such use as soon as reasonably practicable after it was brought into this state.

Appellees contend, and we think with ample justification under the record, that as to all of said property there was at least a brief but definite period of time when it was at rest in this state after being brought in and before being used in connection with or made a part of appellant's pipe-line system.

During that time it was not "tangible personal property used (a) in interstate transportation or interstate commerce."

The controversy arises over the tax status of the property during that period of time after it was delivered in Iowa and before its actual use in connection with such transportation or commerce. Large metal pipes suitable only for transporting gas were bought at retail in another state, shipped by rail into this state, removed from freight cars to motor trucks, hauled to the place where required, there welded together, put through certain treatment such as wrapping and painting, and as soon as convenient placed in trenches dug for that purpose. They soon became a part of an interstate system of gas lines through which natural gas is forced for interstate delivery and sale. The separate pipes and later the connected pipes rested upon the ground only a few hours before they became a part of the interstate transportation system. In the instant case the various items of property involved were at rest in this state for varying lengths of time. The compressors required some time and skilled labor for their installation. All of said property was under the control of appellant and was used as it directed.

The assessment complained of was within the authority of the tax commission to levy unless the exemption statute precludes such assessment. Section 8 of Article I of the United States Constitution, known as the commerce clause, gives Congress the power to regulate commerce among the several states. This state could not legally place a direct burden upon interstate commerce even though the above exemption statute had not been enacted.

Section 423.4 in so far as material here is: "Exemptions. The use in this state of the following tangible personal property is hereby specifically exempted from the tax imposed by this chapter: * * *

"2. Tangible personal property used (a) in interstate transportation or interstate commerce, * * *."

Stating it differently, tangible personal property used in interstate transportation or interstate commerce is exempt from the use tax. Appellant claims with much force that property is being used in such transportation and commerce when it is

brought into the state for such express purpose and for immediate use; that it is being used when it is in the course of being taken to the point of ultimate use and that such was the intent of the act.

The legislature, however, ascribed its own meaning to the word "use". In section 423.1 it defines the word: " 'Use' means and includes the exercise by any person of any right or power over tangible personal property incident to the ownership of that property, except that it shall not include processing, or the sale of that property in the regular course of business."

In the case at bar appellant exercised over the property taxed the rights and powers incident to ownership and this was a use of the property such as to bring it within the use-tax law unless the interstate transportation and commerce exemption is available. The question presented in this case would be somewhat difficult of solution were it not for the recent holding of this court in Michigan-Wisconsin Pipe Line Co. v. Johnson, 247 Iowa 583, 589, 73 N.W.2d 820, 824, which appears to be controlling here. The property involved in that case included such items as water storage tank, cooling tower, water well, scrubbers, compressor building, pipe-line warehouse, pipe-line storage racks, microwave tower and building, air receivers, lubrication oil storage tanks and other items considered necessary to the operation of the pipe-line system. This court held that property was subject to the use tax, stating:

"From a review of the foregoing authorities we have reached the conclusion, and hold, the personal property brought into Iowa by the plaintiff or its contractors was subject to the Iowa use tax. The property so brought in, prior to its actual installation in and as a part of the transportation system of the pipe-line company, had not then become a part of the interstate transportation system. It should be kept in mind the tax was for the use of the property in Iowa and not upon a business of an interstate nature. Consequently there can be no basis for holding the assessment made and levied was a tax on interstate commerce as prohibited by the Federal Constitution."

It is not always easy to determine the precise point beyond which the Federal Government will not go in exercising

its constitutional authority to regulate commerce among the several states. Intrastate affairs may have a direct or indirect effect on interstate commerce. If the effect is direct the "commerce clause" applies. The Supreme Court of the United States in the case of Schechter Poultry Corp. v. United States, 295 U. S. 495, 546, 55 S. Ct. 837, 850, 79 L. Ed. 1570, 97 A. L. R. 947, stated the rule as follows:

"But where the effect of intrastate transactions upon interstate commerce is merely indirect, such transactions remain within the domain of state power. If the commerce clause were construed to reach all enterprises and transactions which could be said to have an indirect effect upon interstate commerce, the federal authority would embrace practically all of the activities of the people and the authority of the State over its domestic concerns would exist only by sufferance of the federal government. Indeed, on such a theory, even the development of the State's commercial facilities would be subject to federal control."

In Bruce Motor Freight, Inc., v. Lauterbach, 247 Iowa 956, 968, 77 N.W.2d 613, 620, after stating that the facts and issues involved therein are not similar to those in the Michigan-Wisconsin case supra, we said, "In the Michigan-Wisconsin case a large volume of building material and parts was purchased outside of Iowa either by the contractor or the company for the purpose of erecting nine houses, tanks, shop, warehouse and four other buildings. This material had all become a part of 'common mass of property within the state of destination.' Quoted from Henneford v. Silas Mason Co., 300 U. S. 577, 582, 57 S. Ct. 524, 526, 81 L. Ed. 814."

"The tax is not on the transaction or sale but is on the use of the article after it is acquired for use in Iowa through a sale in interstate commerce." State Tax Commission v. General Trading Co., 233 Iowa 877, 885, 10 N.W.2d 659, 663, 153 A. L. R. 602; General Trading Co. v. State Tax Commission, 322 U. S. 335, 338, 64 S. Ct. 1028, 1029, 88 L. Ed. 1309.

All parties cite and appear to rely upon the following cases: Southern Pacific Co. v. Gallagher, infra, and Henneford v. Silas Mason Co., Michigan-Wisconsin Pipe Line Co. v. Johnson,

Bruce Motor Freight, Inc., v. Lauterbach, Peoples Gas & Electric Co. v. State Tax Commission, Dain Mfg. Co. v. Iowa State Tax Commission and Morrison-Knudsen Co., Inc., v. State Tax Commission, all supra. We find in them more comfort for appellees than for appellant.

In Southern Pacific Co. v. Gallagher, 306 U. S. 167, 170, 171, 59 S. Ct. 389, 390, 83 L. Ed. 586, the court said:

"The California Use Tax Act of 1935 is assailed as violative of the commerce clause and the Fourteenth Amendment, when imposed upon tangible personal property, bought outside of the state by the Southern Pacific Company, an interstate railroad, and installed on importation, or kept available for use, as a part of its transportation facilities. * * * use is the exercise of any right or power incident to ownership, except sale in the regular course of business; * * *. The principle of the use tax as applied to property brought into the state after its retail purchase for intrastate use has been upheld in Henneford v. Silas Mason Co., against the charge that it was a tax upon the operations of interstate commerce * * *. [Page 173] All purchases may be said to be dedicated to consumption in the interstate transportation business of appellant."

The court further stated at pages 176, 178 of 306 U. S.: "In the present case some of the articles were ordered out of the state under specification suitable only for utilization in the transportation facilities and installed immediately on arrival at the California destination. If articles so handled are deemed to have reached the end of their interstate transit upon 'use or storage', no further inquiry is necessary as to the rest of the articles which are subjected to a retention, by comparison, farther removed from interstate commerce. We think there was a *taxable moment* when the former had reached the end of their interstate transportation and had not begun to be consumed in interstate operation. At that moment, the tax on storage and use—retention and exercise of a right of ownership, respectively—was effective. The interstate movement was complete. The interstate consumption had not begun. * * * A tax on property or upon a taxable event in the state, apart from operation, does not interfere. This is a practical adjustment of

the right of the state to revenue from the instrumentalities of commerce and the obligation of the state to leave the regulation of interstate and foreign commerce to the Congress."

We quote the following (pages 582, 583 of 300 U. S.) from the opinion of Mr. Justice Cardozo in the case of Henneford v. Silas Mason Co., supra: "The [use] tax is not upon the operations of interstate commerce, but upon the privilege of use after commerce is at an end. Things acquired or transported in interstate commerce may be subjected to a property tax, nondiscriminatory in its operation, when they have become part of the common mass of property within the state of destination. [Citing cases] * * * For like reasons they may be subjected, when once they are at rest, to a nondiscriminatory tax upon use or enjoyment. * * * A tax upon the privilege of use or storage when the chattel used or stored has ceased to be in transit is now an impost so common that its validity has been withdrawn from the arena of debate. [Citing cases] * * * The tax upon the use after the property is at rest is not so measured or conditioned as to hamper the transactions of interstate commerce or discriminate against them."

If we are to rely upon the cited cases it is quite clear there is no legal impediment to the assessment and collection of the Iowa use tax upon tangible personal property purchased in another state and brought into this state if no sales or use tax has been previously assessed against it and if it has reached a "taxable moment" when it has arrived at the end of its interstate transportation and is not yet being used or consumed in another interstate operation. While it lies dormant as a part of the mass of property in the state not yet converted to any use or purpose, it is not "tangible personal property used (a) in interstate transportation or interstate commerce." The legislature did not intend section 423.4(2) to include property because it is about to be used or may be used in interstate transportation or commerce.

In the Fifty-sixth General Assembly in 1955 the Senate failed to act on an amendment to section 423.4(2) which would have added the words "or to be used", thus indicating an intention not to override the holding of the Michigan-Wisconsin case.

The statutes of several states provide that the use-tax law does not apply where the property was "used or to be used" in operating or maintaining interstate transportation or commerce. Scandrett v. Nord, 70 S. D. 527, 19 N.W.2d 344. Failure to add the words "or to be used" indicates a legislative intent to confine the effect of the exemption statute to property actually used in such operations.

III. It is urged that the practical construction of the pertinent statute by the officers charged with its administration, when long continued, should be accepted by the courts as its true meaning unless there are very cogent reasons for departing from it.

Without dispute the Tax Commission and the Attorney General over a long period of time construed the exemption statute as appellant now seeks to have it construed. No use tax was collected on such items over a period of many years. Such factual situation cannot avail appellant anything in this case. "It [Tax Commission] has authority to prescribe only such rules and regulations as are not inconsistent with the provisions of statute." Morrison-Knudsen Co., Inc., v. State Tax Commission, 242 Iowa 33, 42, 44 N.W.2d 449, 454, 41 A. L. R.2d 523.

"It will be noted that the rule-making power of the commission may not be 'inconsistent with the provisions of this chapter.' The function of the commission is an administrative one, and it may enact reasonable rules and regulations necessary in carrying out the legislative enactments. But it may not make law, or by rule change the legal meaning of the common law or the statutes." City of Ames v. State Tax Commission, 246 Iowa 1016, 1022, 71 N.W.2d 15, 19.

See also Louisville & N. R. Co. v. United States, 282 U. S. 740, 51 S. Ct. 297, 75 L. Ed. 672; Boyer-Campbell Co. v. Fry, 271 Mich. 282, 260 N.W. 165, 98 A. L. R. 827.

We are not persuaded we should recede from previous holdings of this court and particularly the holding in Michigan-Wisconsin Pipe Line Co. v. Johnson, supra, and we therefore affirm. —Affirmed.

BLISS, GARFIELD, OLIVER, THOMPSON, HAYS, and THORNTON, JJ., concur.

LARSON, C. J., and PETERSON, J., dissent.

PETERSON, J. (dissenting)—I respectfully dissent.

The facts are stated in the majority opinion.

The principles involved in the application of use tax to goods in interstate transportation are stated and analyzed in three cases where the question has been before this court. Michigan-Wisconsin Pipe Line Co. v. Johnson, 247 Iowa 583, 73 N.W.2d 820; Bruce Motor Freight, Inc., v. Lauterbach, 247 Iowa 956, 77 N.W.2d 613; and the instant case. The question involved is the application of those principles to the goods under consideration. The majority opinion is based largely on Michigan-Wisconsin Pipe Line Co. v. Johnson, supra, as a precedent.

I contend there is a clear distinction between the goods under consideration in Michigan-Wisconsin Pipe Line Co. v. Johnson, supra, and those involved in the case at bar. In the Michigan-Wisconsin case the goods consisted largely of lumber and other material for the erection of nine houses and other construction in connection with headquarters for the company in the state.

In the instant case the goods consisted of pipe to carry gas in interstate commerce, and compression engines to be incorporated into plaintiff's system to accelerate the movement of the gas. The goods to which the tax was attached were never diverted from interstate commerce. They never became a " 'common mass of property within the state of destination.' "

There was no taxable moment at which the goods came to rest. They moved continuously from the out-state shipping point of origin into the ground as to pipes and into connection with the plant as to accelerator. The fact that it might have been a short time or longer time to get the pipes in the ground or to get the accelerator connected was immaterial, as long as the intention continued uninterrupted, in good faith, that the goods were going into the interstate establishment.

The nature of the goods was such that they had to be unloaded from cars to become included in the cross-country and interstate gas transportation system, but there never was any

intent, nor any action taken, that they should or could be used for anything but an integral part of the interstate system.

We could with equal validity say that a tax attached when a company first built an interstate line across the state, and when the pipe in such process was transferred from railroad car or truck to underground.

There is a vast distinction between lumber and building material, capable of a multitude of uses, to pipe and accelerators capable of only one use, the interstate pipe line.

I would reverse.

LARSON, C. J., joins in this dissent.