CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, appellee, v. IOWA STATE TAX COMMISSION (members), appellants.

No. 51946.

MAY 3, 1966.

REHEARING DENIED JULY 13, 1966.

Lawrence F. Scalise, Attorney General, and Thomas W. McKay, Special Assistant Attorney General, for appellants.

R. T. Cubbage, of Chicago, Illinois, and Parrish, Guthrie, Colflesh & O'Brien, of Des Moines, for appellee.

THORNTON, J.—The plaintiff-railroad seeks to mandamus the tax commission to refund use tax on fuel oil purchased outside the state by plaintiff and brought into Iowa. It advances two theories (1) the fuel oil is consumed in creating power for generating electric current, section 423.1, paragraph 1(b), Code, 1962, and (2) it is used in interstate transportation, section 423.4, paragraph 2(a), Code, 1962. The trial court held in favor of the railroad in the alternative on both theories.

The record below was on stipulated facts. The trial court found the facts as stipulated. Mandamus is in equity, section 661.3, Code, 1962, our review is de novo, rule 334, Rules of Civil Procedure.

I. The pertinent part of the stipulated facts in relation to plaintiff's contention the fuel is consumed in creating power for generating electric current is as follows:

"9. Said diesel fuel, after being placed in the tanks of Burlington diesel electric locomotives, was consumed in the following manner: as a part of the operation of said diesel electric locomotives, said diesel fuel was pumped or injected into the combustion chambers of the various diesel electric locomotives of Burlington, whereupon, as a part of the operation of said locomotives, explosions occurred in the various piston combustion chambers; and the power or force of these explosions was used, by means of a drive shaft and other mechanical portions of the locomotive, to turn a direct current electric generator or generators, located in each such locomotive, which generated electricity nominally at 600 volts. However, 5% of said fuel was used to heat boilers, so as to provide steam for heating passenger-train cars, or to provide compressed air for brake operations or for lighting purposes.

"10. That said electricity generated in said locomotives thereafter, by means of wires and cables, was transmitted to individual electric motors, located in the truck and wheel assemblies of said diesel electric locomotives, which electric motors, through appropriate gear arrangements, were used to turn the wheels and thereby to move the trains or locomotives of Burlington."

Paragraph 11 of the stipulation states 95 percent of the fuel is so used.

The use tax is imposed on the use in this state of tangible personal property purchased for use in this state by section 423.2, Code, 1962. Section 423.4, paragraph 1, Code, 1962, exempts from use tax personal property on which Iowa sales tax is imposed.

Section 423.1, Code, 1962, as amended by section 2 of chapter 260 of the Laws of the Sixtieth General Assembly, is a definition section. It defines "use" as follows:

"1. 'Use' means and includes the exercise by any person of any right or power over tangible personal property incident to the ownership of that property, except that it shall not include processing, or the sale of that property in the regular course of business. Property used in 'processing' within the meaning of this subsection shall mean and include (a) any tangible personal property including containers which it is intended shall, by means of fabrication, compounding, manufacturing, or germination, become an integral part of other tangible personal property intended to be sold ultimately at retail, (b) fuel which is consumed in creating power, heat, or steam for processing or for generating electric current, (c) industrial materials and equipment, which are not readily obtainable in Iowa, and which are directly used in the actual fabricating, compounding, manufacturing, or servicing of tangible personal property intended to be sold ultimately at retail, or (d) chemicals, solvents, sorbents, or reagents, which are directly used and are consumed, dissipated, or depleted in processing personal property, which is intended to be sold ultimately at retail, and which may not become a component or integral part of the finished product."

The only things excluded from use are processing or sale in the regular course of business. Processing is not defined. What is defined is property used in processing, (a), (b), (c) and (d) above do that. (a), (c) and (d) clearly relate to property used in reaching an end result of a salable product. (b) clearly does the same insofar as it relates to processing. And in each instance the final product is subject to the sales tax.

What plaintiff does is not generate electric current but run locomotives. The fuel oil under consideration is consumed in running locomotives. To come within the definition of property used in processing in (b) plaintiff is taking an intermediate

step in the use of the fuel to run a locomotive, not the end result.

Defendant urges the statute should be strictly construed against the exemption, combustion of diesel fuel oil in an internal combustion engine is not processing, the processing exemptions are enacted for the purpose of avoiding double taxation and the use tax is designed to supplement the sales tax. Plaintiff contends the exemption or definition is clear and unambiguous, it is not open to construction, even if construed the exemption is clear, that fuel oil for generating electricity is specifically excluded and neither the legislature nor courts have required that a subsequent taxable sale at retail always be shown for the exemption to be applicable.

The important question for decision is whether the definition under (b) was intended to include an intermediate step or an end result.

Plaintiff actually argues this question when it urges as above that the exemption is clear and a subsequent taxable sale is not always required.

The first question for determination is whether (b) above is ambiguous. The rule is often stated, where the language of a statute is plain and its meaning clear and unmistakable there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself. Dingman v. City of Council Bluffs, 249 Iowa 1121, 1126, 90 N.W.2d 742; and Clarion Ready Mixed Concrete Co. v. Iowa State Tax Commission, 252 Iowa 500, 507, 107 N.W.2d 553. This is not, however, all of the rule. In Dingman v. City of Council Bluffs, supra, and Board of Education (Franklin County) v. Board of Education (Hardin County), 250 Iowa 672, 676, 95 N.W.2d 709, we quote Long v. Northup, 225 Iowa 132, 140, 279 N.W. 104, 109, 116 A. L. R. 1475, repeated in Iowa-Illinois Gas & Electric Co. v. City of Bettendorf, 241 Iowa 358, 362, 41 N.W.2d 1, 4, as follows, "The intent of the legislature, in the absence of previous construction of its enactments, must be determined both from the language used and the purpose of the legislation." In Dingman v. City of Council Bluffs and Board of Education (Franklin County) v. Board of Education (Hardin County), both supra, we cite 50 Am. Jur., Statutes, sections 223 to 226 inclusive. Section 226 in part states:

"An ambiguity justifying the interpretation of a statute, is not simply that arising from the meaning of particular words, but includes such as may arise in respect to the general scope and meaning of a statute when all its provisions are examined. * * * There is also authority for the rule that uncertainty as to the meaning of a statute may arise from the fact that giving a literal interpretation to the words would lead to such unreasonable, unjust, impracticable, or absurd consequences as to compel a conviction that they could not have been intended by the legislature."

In 82 C. J. S., Statutes, section 322(3), Ambiguities, the bold-faced headnote states, "The duty devolves on the court to ascertain the true meaning where the language of a statute is of doubtful meaning, or where an adherence to the strict letter would lead to injustice, absurdity or contradictory provisions."

In National Labor Relations Board v. Lewis, 249 F.2d 832, 835, affirmed Lewis v. National Labor Relations Board, 357 U. S. 10, 78 S. Ct. 1029, 2 L. Ed.2d 1103, is this statement, "Where the language is clear and unequivocal it is determinative unless the literal language does not comport with the intent and objectives of the statute viewed as a whole."

▮ Where the statute is ambiguous the exception is strictly construed against the taxpayer and the burden is on him to show he comes within the exception. Fischer Artificial Ice & Cold Storage Co. v. Iowa State Tax Commission, 248 Iowa 497, 499, 81 N.W.2d 437.

In examining (b) above we are not only allowed to know, but required to know, what everyone else does, and that is the great bulk of electric current is sold to consumers by power companies, municipal corporations and cooperatives. Such sales are subject to the sales tax. Section 422.43, Code, 1962. In order to avoid double taxation or the increase in cost to consumers the same exception as (b) above is provided in the sales tax law. Section 422.42(3), Code, 1962. Fischer Artificial Ice & Cold Storage Co. v. Iowa State Tax Commission, 248 Iowa 497, 505, 81 N.W.2d 437.

▮ We have consistently stated the purpose of the use tax is to supplement the sales tax. Northern Natural Gas Co. v. Lauterbach, 251 Iowa 885, 100 N.W.2d 908; Fischer Artificial

Ice & Cold Storage Co. v. Iowa State Tax Commission, supra; and Dain Manufacturing Co. of Iowa v. Iowa State Tax Commission, 237 Iowa 531, 22 N.W.2d 786.

An examination of the exceptions and exemptions in the sales tax law, sections 422.42(3), 422.44 and 422.45, Code, 1962, and in the use tax law, sections 423.1(1), 423.3 and 423.4, Code, 1962, we find those brought about by constitutional provisions, section 422.45(1) and section 423.4(2); those to exempt fairs and charitable, educational and religious organizations, section 422.45(3) and section 423.4(6); public purpose, sections 422.44 and 422.45(5) and (6), and sections 423.3 and 423.4(6); and to avoid double taxation, section 422.42(3), section 423.1 subsection 1(a), first part of (b), (c) and (d), and section 423.4(1) and (3). The gross receipts from the sales, furnishing or service of transportation are exempt from sales tax by virtue of section 422.45(2). See also Sales and Use Tax Rules numbers 29, 41, 108 and 108.1, and Clarion Ready Mixed Concrete Co. v. Iowa State Tax Commission, 252 Iowa 500, 107 N.W.2d 553. This exempts plaintiff from any sales or use tax, section 423.4(6), on its freight or passenger service as such. This avoids double taxation.

In the sales tax law, section 422.42(3), there are exceptions for the benefit of agriculture, a long recognized proper benefit in Iowa. See, e.g., Merchants' Union Barb Wire Co. v. Brown, 64 Iowa 275, 20 N.W. 434. They avoid double taxation and contemplate an end result or salable product.

" 'Retail sale' * * * does not include commercial fertilizer or agricultural limestone or materials, but not tools or equipment, which are to be used in disease control, weed control, insect control or health promotion of plants or livestock produced as part of agricultural production for market, * * * or * * * fuel * * * consumed in implements of husbandry engaged in agricultural production."

The sales tax is a revenue measure. The use tax supplements it for the same purpose. The foregoing examination of the exceptions and exemptions included in both demonstrates that in each case the exception or exemption is given for a definite and apparent purpose or contemplates a finished or salable product, and in each instance affects all similarly situated in the same manner.

If we give to the exception (b) the literal interpretation urged by plaintiff we have an exception in favor of plaintiff and railroads similarly situated but not in favor of a train operated other than by a diesel electric locomotive and an exception not enjoyed by other intrastate and interstate carriers. See section 324.52, Code, 1962. We also have an exception which has no known or apparent purpose, it is merely an accident of language. And we do not have an end result or a salable product but an exception for an intermediate step in the real purpose of the use of the fuel. Such an exception is a "sport", an absurdity. An intention not fairly attributable to the legislature. On the other hand, if we interpret the language used as referring to an end result, the generating of electric current by power companies and others, we have a known and apparent reason, the avoidance of double taxation. We also interpret "generating electric current" in the sense ordinarily used.

Plaintiff urges the legislature has not required, nor have we, that a taxpayer must show that a sales tax was imposed before a use tax exemption would be upheld. This statement is probably correct. However, it does not quite reach the question. In every other instance there is a salable product, an end result, whether sales tax is actually imposed, or there is an apparent and known reason for the exception.

██ We have considered the authorities cited by plaintiff to the effect we cannot add words to the statute, and in effect that is what we are doing by holding the exception applies only to those who generate electric current as an end result because of necessity it is for resale. The rule contended for is neither controlling nor applicable here. Our interpretation is simply, when the statute is considered as a whole, generating electric current is used in a sense contemplating a complete action or end result and does not include one who consumes fuel to run a locomotive even though as an intermediate step he generates electric current.

II. The second reason urged by plaintiff-railroad is that 80 percent of its fuel oil was exempt from use tax under section 423.4, Code, 1962, "The use in this state of the following tangible personal property is hereby specifically exempted from the tax imposed by this chapter: * * * 2. Tangible personal property

used (a) in interstate transportation or interstate commerce, * * *."

Defendant contends the trial court was in error when it held there was no "taxable moment" during the period the fuel oil was stored at Burlington. Plaintiff contends there is only a "taxable moment" as to property brought into this state that is to be installed or placed in Iowa, and not to property such as its fuel oil, which will not become part of an Iowa fixture and which will continue to move in interstate transportation.

The stipulated facts show plaintiff maintains a storage facility in Burlington, all the fuel oil under assessment here was brought into the state from out of the state on plaintiff's own tank cars and pumped into the storage facility and at a later time pumped into plaintiff's locomotives to run the trains. Twenty percent of the fuel was consumed in intrastate use in Iowa, 50 percent in interstate transportation in Iowa, 30 percent in interstate transportation outside of Iowa, or a total of 80 percent used in interstate transportation which plaintiff contends is exempt.

The exemption is based on the above exemption statute and not on the commerce clause of the United States Constitution. Plaintiff insists there is a difference. We agree to the extent of saying the exemption has its basis in the lack of power of the state to levy a tax on interstate commerce and undoubtedly was enacted to avoid such conflict. And to the extent of saying if the tax was on use in interstate commerce or transportation it would come within the exemption. Here the tax was on another use, namely storage, this is the taxable moment, and not on use in interstate commerce. The interstate transportation of the fuel has ended, it is stored, and its use or consumption as fuel in interstate commerce has not yet started. Nashville, Chattanooga & St. Louis Railway v. Wallace, 288 U. S. 249, 266, 53 S. Ct. 345, 349, 77 L. Ed. 730, 87 A. L. R. 1191, holding gasoline used and stored exactly like the fuel oil here was subject to state tax and such did not violate the commerce clause; Southern Pacific Co. v. Gallagher, 306 U. S. 167, 176, 177, 59 S. Ct. 389, 393, 83 L. Ed. 586; Northern Natural Gas Co. v. Lauterbach, 251 Iowa 885, 893, 100 N.W.2d 908; The Flying Tiger Line v. State Board of Equalization, 157 Cal. App.2d 85, 320 P.2d 552; and The

Atchison, Topeka and Santa Fe Railway Co. v. State Board of Equalization, 139 Cal. App.2d 411, 294 P.2d 181. There is no effort here to tax the fuel in the fuel tanks of locomotives as they come into Iowa.

The use tax is imposed "on the use in this state of tangible personal property purchased * * * for use in this state, * * *." Section 423.2, Code, 1962. "Use" is defined: "1. 'Use' means and includes the exercise by any person of any right or power over tangible personal property incident to the ownership of that property, * * *." Section 423.1(1), Code, 1962. Storing personal property is the exercise of a right or power over it. This use does not depend on the length of time the property is stored or on its anticipated use.

Plaintiff urges that to so consider the exemption nullifies it. This argument is not sound. The use exempted from use tax under section 423.4, paragraph 2(a), Code, 1962, is property used in interstate transportation or commerce. That is the only use exempt. Another use of the same property is not exempt. Tax exemption statutes are strictly construed against the taxpayer and in favor of the taxing authority. State v. Bishop, 257 Iowa 336, 132 N.W.2d 455.

We cannot expand the statute to include property that is to be used in interstate commerce or transportation. The legislature has rejected so doing, as we have. Northern Natural Gas Co. v. Lauterbach, 251 Iowa 885, 893, 894, 100 N.W.2d 908, 913.

Plaintiff urges the fuel oil here is analogous to the use of the motor vehicles in Bruce Motor Freight, Inc. v. Lauterbach, 247 Iowa 956, 77 N.W.2d 613, wherein we held the placing of safety equipment on motor vehicles in plaintiff's repair shops in Iowa, where the safety equipment was added only for the purpose of preparing the vehicles for immediate interstate use did not constitute another use or a "taxable moment." Implicit in our holding there is that the use made of the vehicles, adding safety equipment, was a part of interstate transportation or commerce. The vehicles in Bruce were not stored for later use but the use was continual in interstate commerce.

It follows the case must be and is—reversed.

All Justices concur.