**INTER–STATE NURSERIES, INC.,**
**Appellant,**

v.

**IOWA DEPARTMENT OF REVENUE, DI-**
**rector of Revenue, William H. Forst,**
**Substituted Appellees,**

Formerly: Iowa State Tax Commission, Earl
Burrows, Chairman, Lynn Potter and
X. T. Prentice, Appellees.

No. 53185.

Supreme Court of Iowa.

Feb. 11, 1969.

Swift, Brown, Winick & Randall, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., George W. Murray, Sp. Asst. Atty. Gen., and Harry M. Griger, Asst. Atty. Gen., for appellees.

RAWLINGS, Justice.

By action in equity, Inter-State Nurseries, an Iowa corporation, doing business in Hamburg, challenges a State Tax Commission deficiency use tax assessment, defendant being now identified as Department of Revenue. (Chapter 342, Acts of Sixty-Second General Assembly) Trial court sustained the assessment and plaintiff appeals. We affirm.

Appellant is a retail horticultural nursery conducting most of its business by mail. The record discloses over 99% of Inter-State's sales are generated from spring and fall distributed catalogues and flyers.

This advertising material is printed outside Iowa and shipped by common carrier to Inter-State's office at Hamburg. Special sized envelopes, also purchased out of state, are likewise delivered to appellant's Iowa premises.

Transported to appellant in less than carload lots, the envelopes are timed to arrive at staggered intervals during mailing periods. Upon arrival at Inter-State's plant the envelopes, catalogues and flyers are removed from the delivering carriers, placed in a building on appellant's Iowa premises, where the envelopes are addressed to prospective customers, and the advertising material then inserted in them. That done, the packaged envelopes are tied in bundles, according to zip code or city, and placed in the hands of on-site postal employees for mailing.

Appellant distributed approximately 950,000 catalogues in the spring of both 1965 and 1966, and 750,000 in the fall of each of those years. Approximately 1,000,000 flyers were mailed by appellant in both 1965 and 1966.

The record discloses the catalogues, flyers, and envelopes are held in appellant's plant from one to three days after arrival.

Upon the basis of this factual showing, appellees assessed a use tax and penalty for the period from January 1, 1961, to June 30, 1966. In upholding the assessment trial court found, in substance, "use" by appellant began when the envelopes and catalogues were removed from interstate channels, and ended when the packaged materials were delivered to postal authorities for mailing. Stated otherwise, the court held, pending ultimate customer distribution, the property was in appellant's possession subject to whatever use it desired.

I. Our review is de novo, but we ordinarily give weight to trial court's findings and conclusions, although not bound by them. See sections 423.16 and 422.-55(3), Code 1966; rule 344(f) (7), Rules of Civil Procedure; and Randolph Foods, Inc. v. McLaughlin, 253 Iowa 1258, 1279, 115 N.W.2d 868.

II. The United States Supreme Court dissipated any doubt as to general validity and purpose of the Iowa Use Tax Act in Nelson v. Sears, Roebuck & Co.,

312 U.S. 359, 61 S.Ct. 586, 85 L.Ed. 888; and Nelson v. Montgomery Ward & Co., 312 U.S. 373, 61 S.Ct. 593, 85 L.Ed. 897.

■ After holding in Nelson v. Sears, Roebuck & Co., supra, at 312 U.S. 361, 61 S.Ct. 587, the Iowa Use Tax Act, being a tax on use in Iowa of tangible property, is complementary to our Iowa Retail Sales Tax Act, the court stated, loc. cit., 312 U. S. 363, 61 S.Ct. 588: "It is one of the well-known functions of the integrated use and sales tax to remove the buyers' temptation 'to place their orders in other states in the effort to escape payment of the tax on local sales.' Henneford v. Silas Mason Co., supra, 300 U.S. [577] at page 581, 57 S.Ct. [524] at page 526, 81 L.Ed. 814. As pointed out in that case (300 U.S. at page 582, 57 S.Ct. at page 526, 81 L.Ed. 814), the fact that the buyer employs agencies of interstate commerce in order to effectuate his purchase is not material, since the tax is 'upon the privilege of use after commerce is at an end.' * * * Use in Iowa is what is taxed regardless of the time and place of passing title and regardless of the time the tax is required to be paid." See also Chicago, B. & Q. R. Co. v. Iowa State Tax Comm., 259 Iowa 178, 183–185, 142 N.W.2d 407.

III. On appeal Inter-State contends, in effect, (1) the catalogues, flyers and envelopes, not having been purchased for use or used in Iowa, are not subject to a use tax, and (2) they are exempt from such tax by section 423.4(2) as tangible personal property used in interstate commerce or transportation.

This means the broad question to be resolved is whether advertising material, purchased out of state by appellant, delivered in Iowa by common carrier, removed from the delivering carriers at Hamburg, where the envelopes are addressed, and catalogues inserted therein, with the packaged material subsequently mailed to prospective customers residing in states other than Iowa, is purchased for use or used in Iowa, and

if so is that use statutorily exempt from imposition of the tax?

Relevant provisions of the Act, chapter 423, Code 1966, as amended, provide:

Section 423.1(1)—" 'Use' means and includes the exercise by any person of any right or power over tangible personal property incident to the ownership of that property, * *. *."

Section 423.2—"An excise tax is hereby imposed on the use in this state of tangible personal property purchased on or after April 16, 1937, for use in this state, at the rate of three percent of the purchase price of such property."

Section 423.4—"The use in this state of the following tangible personal property is hereby specifically exempted from the tax imposed by this chapter:

" * * *

"2. Tangible personal property used (a) in interstate transportation or interstate commerce, * * *."

Appellant first argues, the definition of "use" in Code section 423.1(1), quoted supra, should not be so literally construed as to have the effect of imposing a property tax rather than an excise tax. This argument is based upon the premise the term "use" should be limited to a real or ultimate utilization of the property, rather than the exercise of any right or power over tangible personal property, and to hold otherwise would serve, in effect, to impose a property tax.

■ In that regard the legislature may be its own lexicographer, and in construing any statute courts are ordinarily bound by the definition of terms specified by the General Assembly. Graham v. Worthington, 259 Iowa 845, 853, 146 N.W.2d 626, 632; and Sandberg Co. v. Iowa State Board, 225 Iowa 103, 107, 278 N.W. 643, 281 N.W. 197.

At the outset we direct attention to the contention, the statutory definition of

"use", as here applied by defendants, serves to create a property rather than an intended excise tax.

The California Supreme Court, dealing with this subject in Douglas Aircraft Co. v. Johnson, 13 Cal.2d 545, 90 P.2d 572, 575–576, stated: "The determination of whether a particular tax is a property or excise tax is not always an easy matter. In discussing this problem in Ingels v. Riley, supra, 5 Cal.2d [154] page 159, 53 P.2d [939] page 941, 103 A.L.R. 1, it is stated:

" 'The distinction between a tax on a privilege and a property tax is many times a close one. Generally speaking, the function of a property tax is to raise revenue. Such a tax does not impose any condition nor does it place any restriction upon the use of the property taxed. A privilege tax, although also passed to raise revenue, and as such is to be distinguished from the license tax or regulatory charge imposed under the state's police powers, is imposed upon the right to exercise a privilege, and its payment is invariably made a condition precedent to the exercise of the privilege involved. 37 Cor.Jur., p. 171, § 9, and cases cited.

" 'It is impossible to lay down any positive rule by means of which the character of any given tax may be ascertained. In each case the character of the given tax must be ascertained by its incidents and from the natural and legal effect of the language employed in the statute.'

"Applying this test to the statute here under consideration we have no hesitancy in holding that the tax imposed is an excise tax, for revenue purposes, levied on the privilege of use, * * *. In the first place, as indicated by the quotations from the statute, supra, the legislature has denominated the levy an excise tax. Although not conclusive this is entitled to considerable weight in ascertaining the nature of the tax. (Cases cited.)

" * * *

"In the second place it is obvious, from a reading of the act, that the tax here levied is not imposed on the ownership of property as such. It does not apply to the use of property to be resold. It does not recur annually, but falls due only once. It is not imposed on a fixed day, although it is collectible quarterly—in short, it does not fall upon the owner because he is the owner, regardless of the use or disposition he may make of the property. It is imposed on certain of the privileges of ownership, but not on all of them.

" * * * There is a long line of authorities most of them of recent date, holding that use taxes, including taxes imposed on the privilege of use, or storage, or withdrawal from storage, are excise taxes and not property taxes." See also in this respect, Connecticut Light & Power Co. v. Walsh, 134 Conn. 295, 57 A.2d 128, 134, 1 A.L.R.2d 453, and St. Paul & Tacoma Lumber Co. v. State, 40 Wash.2d 347, 243 P.2d 474, 478.

As quoted supra, Code section 423.2 expressly labels the measure an excise tax. The levy is on the exercise in Iowa of any right or power over tangible personal property, not on ownership as such. The Act serves to impose a tax but once. It does not recur regularly as do property taxes. Nor is it assessed on a fixed day although collectible quarterly. In short, the tax is collectible with regard to certain privileges incident to ownership exercised in Iowa. As aforesaid it is designed to complement the Iowa Retail Sales Tax Act, chapter 422, Code 1966, by placing in-state purchasers of out-of-state tangible personal property on a parity with Iowa consumers who purchase those same items within the state. One of its chief functions is to prevent evasion of the Iowa sales tax by the making of out-of-state purchases. See Nelson v. Sears, Roebuck & Co., and Nelson v. Montgomery Ward & Co., both supra, and Broadacre Dairies v. Evans, 193 Tenn. 441, 246 S.W.2d 78, 79.

It is evident Code chapter 423 provides a source of revenue to the state by means of an excise tax imposed on the ex-

ercise of rights and privileges incident to ownership, within the state, over certain classes of out-of-state purchased tangible personal property.

IV. The next question to be resolved is whether appellant exercised, in this state, any right or power incident to ownership over the catalogues, flyers and envelopes such as to constitute a "use" in Iowa.

In that regard the factual situation discloses Inter-State Nurseries, (1) ordered the catalogues, flyers and envelopes here concerned; (2) they were delivered by common carrier to Hamburg, and there removed from the carrier; and (3) were there addressed, packaged and sorted for mailing by the nursery.

■ From this it is apparent the nursery exercised, in this state, rights and powers incident to ownership over the catalogues, flyers and envelopes delivered at its in-state place of business. More specifically, the imported material was used by appellant, in Iowa, as a means of advertising and promoting the sale of its products. This was clearly a use in Iowa within the contemplation of Code chapter 423. As stated in Northern Natural Gas Co. v. Lauterbach, 251 Iowa 885, 890, 100 N.W.2d 908, 911: " * * * appellant exercised over the property taxed the rights and powers incident to ownership and this was a use of the property such as to bring it within the use tax law unless the interstate transportation and commerce exemption is available."

V. Appellant next argues, if there was a use in Iowa of the property involved then section 423.4(2), quoted supra, exempting uses in interstate transportation or commerce here applies.

In other words, the nursery contends the imported advertising material was continually in interstate transit; that a mere break in the multi-state journey, due to exigencies or conveniences of the chosen means of transportation, does not halt the interstate flow.

On the other hand appellees take the position, and trial court held, there existed a "taxable moment" at Hamburg, when the property came to rest in this state after an interstate journey, before it was deposited in interstate commerce via the U.S. mails.

■ We have repeatedly held, tax exemption statutes are to be strictly construed against the taxpayer and in favor of the taxing authority. Chicago, B. & Q. R. Co. v. State Tax Comm., 259 Iowa 178, 187, 142 N.W.2d 407.

Code section 423.4(2) has previously been before this court for consideration. In Chicago, B. & Q. R. Co. v. State Tax Comm., supra, at 259 Iowa 186, at 142 N. W.2d 412, we said: "The exemption is based on the above exemption statute and not on the commerce clause of the United States Constitution. Plaintiff insists there is a difference. We agree to the extent of saying the exemption has its basis in the lack of power of the state to levy a tax on interstate commerce and undoubtedly was enacted to avoid such conflict. And to the extent of saying if the tax was on use in interstate commerce or transportation it would come within the exemption."

■ It is thus apparent, regardless of the constitutional doctrine requiring a showing that a tax on interstate commerce is destructive, burdensome or discriminatory, the aforesaid statutory exemption applies only where a showing is made that the use is an inseparable part of interstate commerce.

The problem thus posed is whether appellant's use of the catalogues, flyers and envelopes is interstate in nature, therefore exempt under our statute, or an intrastate taxable event.

The United States Supreme Court, in Southern Pacific Co. v. Gallagher, 306 U. S. 167, 59 S.Ct. 389, 83 L.Ed. 586, dealt with that issue in considering a California use tax assessment on tangible personal property bought outside that state by a railroad, then imported and installed on its

interstate transportation facilities. There the court said, loc. cit., 306 U.S. 167, 176–178, 59 S.Ct. 393–394: "The principle illustrated by the Helson Case [Helson v. Kentucky, 279 U.S. 245, 49 S.Ct. 279, 73 L.Ed. 683] forbids a tax upon commerce or consumption in commerce. The Wallace Case [Nashville, C. & St. L. Ry. v. Wallace, 288 U.S. 249, 53 S.Ct. 345, 77 L.Ed. 730, 87 A. L.R. 1191], and precedents analogous to it, permit state taxation of events preliminary to interstate commerce. The validity of any application of a taxing act depends upon a classification of the facts in the light of these theories. In the present case some of the articles were ordered out of the state under specification suitable only for utilization in the transportation facilities and installed immediately on arrival at the California destination. If articles so handled are deemed to have reached the end of their interstate transit upon 'use or storage,' no further inquiry is necessary as to the rest of the articles which are subjected to a retention, by comparison, farther removed from interstate commerce. *We think there was a taxable moment when the former had reached the end of their interstate transportation and had not begun to be consumed in interstate operation. At that moment, the tax on storage and use—retention and exercise of a right of ownership, respectively—was effective. The interstate movement was complete. The interstate consumption had not begun. * * * 'Practical continuity' does not always make an act a part of interstate commerce.* This conclusion does not give preponderance to the language of the state act over its effect on commerce. State taxes upon national commerce or its incidents do not depend for their validity upon a choice of words but upon the choice of the thing taxed. It is true, the increased cost to the interstate operator from a tax on installation is the same as from a tax on consumption or operation. This is not significant. *The prohibited burden upon commerce between the states is created by state interference with that commerce, a matter distinct from the expense of doing business.* A discrimination against it, or a tax on its operations as such, is an interference. *A tax * * * upon a taxable event in the state, apart from operation, does not interfere.* This is a practical adjustment of the right of the state to revenue from the instrumentalities of commerce and the obligation of the state to leave the regulation of interstate and foreign commerce to the Congress." (Emphasis supplied) See also Henneford v. Silas Mason Co., 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814.

We too have had occasion to consider the taxable event theory in relation to use tax assessments.

Michigan-Wisconsin Pipe Line Co. v. Johnson, 247 Iowa 583, 73 N.W.2d 820, involved a use tax assessment on tangible personal property purchased out of state, brought into Iowa by common carrier, removed therefrom, then made an integral part of compressor stations and auxiliary buildings along the company's interstate pipeline. There, after citing Southern Pacific, supra, and others, this court said at 247 Iowa 589, at 73 N.W.2d 824: "From a review of the foregoing authorities we have reached the conclusion, and hold, the personal property brought into Iowa by the plaintiff or its contractors was subject to the Iowa use tax. The property so brought in, prior to its actual installation in and as a part of the transportation system of the pipeline company, had not then become a part of the interstate transportation system. It should be kept in mind the tax was for the use of the property in Iowa and not upon a business of an interstate nature. Consequently there can be no basis for holding the assessment made and levied was a tax on interstate commerce as prohibited by the federal constitution."

A use tax assessment was also involved in Bruce Motor Freight, Inc. v. Lauterbach, 247 Iowa 936, 77 N.W.2d 613. Recognition was there accorded the "taxable event" concept applied in Michigan-Wis-

consin Pipe Line Co. v. Johnson, supra. However, we held the placing of safety equipment on plaintiff's motor vehicles in its Iowa repair shops preparatory to immediate interstate usage did not constitute a break in the flow of interstate commerce.

Another case dealing with the matter of taxable event, and its relationship to the exemption contained in section 423.4(2), quoted supra, is Northern Natural Gas Co. v. Lauterbach, 251 Iowa 885, 100 N.W.2d 908. The factual situation there presented is so analogous to that involved in the case at bar as to justify repetition. At 251 Iowa 889, at 100 N.W.2d 910 this court said: "The controversy arises over the tax status of the property during that period of time after it was delivered in Iowa and before its actual use in connection with such transportation or commerce. Large metal pipes suitable only for transporting gas were bought at retail in another state, shipped by rail into this state, removed from freight cars to motor trucks, hauled to the place where required, there welded together, put through certain treatment such as wrapping and painting, and as soon as convenient placed in trenches dug for that purpose. They soon became a part of an interstate system of gas lines through which natural gas is forced for interstate delivery and sale. The separate pipes and later the connected pipes rested upon the ground only a few hours before they became a part of the interstate transportation system. In the instant case the various items of property involved were at rest in this state for varying lengths of time. The compressors required some time and skilled labor for their installation. All of said property was under the control of appellant and was used as it directed." Turning then to the law of the case, we found Michigan-Wisconsin Pipe Line Co. v. Johnson, supra, was controlling and accordingly held the metal pipes delivered to Northern Natural Gas were subject to assessment in that a "taxable moment" existed at the end of its interstate transportation, before being used or consumed in another interstate operation. In fact we said

at 251 Iowa 893, at 100 N.W.2d 913: "The legislature did not intend Section 423.4(2) to include property because it is about to be used or may be used in interstate transportation or commerce."

The most recent case to come before us involving the subject at hand is Chicago B. & Q. R. Co. v. State Tax Comm., 259 Iowa 178, 142 N.W.2d 407. There involved was a use tax assessment on fuel oil purchased out of state, brought into Iowa by plaintiff railroad, placed in an Iowa storage facility and later pumped into its railroad locomotives for movement of traffic in interstate commerce. Upholding a use tax assessment this court stated loc. cit., 259 Iowa 186, 142 N.W.2d 412: "* * * the tax was on another use, namely storage, this is the taxable moment, and not on use in interstate commerce. The interstate transportation of the fuel has ended, it is stored, and its use or consumption as fuel in interstate commerce has not yet started."

Regarding appellant's argument its goods were retained in Iowa merely for addressing and packaging, then almost immediately restored to the flow of interstate traffic, we said in Dodgen Industries, Inc. v. Iowa State Tax Commission, Iowa, 160 N.W.2d 289, 295: "* * * the Court in sustaining the tax * * * in International Harvester Co. v. Department of Treasury, supra (322 U.S. 340, at 345–346, 64 S.Ct. 1019, at 1021–1022, 88 L.Ed.2d 1313), stated:

"'* * * The Wood Preserving Corp. case (Dept. of Treasury of State of Indiana v. Wood Preserving Corp., 313 U.S. 62, 61 S.Ct. 885, 85 L.Ed. 1188) indicates that it is immaterial to the present issue that the goods are to be transported out of [taxing state] immediately on delivery. * * * Under the principle of [McGoldrick v. Berwind-White Coal Mining Co., supra (309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565)], a buyer who accepted delivery in New York would not be exempt from the sales tax because he came from without the State and intended to return to his home with the goods. * * * [I]n each a local

*transaction is made the taxable event and that event is separate and distinct from the transportation or intercourse which is intestate commerce. * * *.'"* (Emphasis supplied)

See also in this regard Oklahoma Tax Commission v. Stanolind Pipe Line Co., 10 Cir., 113 F.2d 853; Atchison, Topeka & Santa Fe R. Co. v. State Board of Equalization, 139 Cal.App.2d 411, 294 P.2d 181; and Mavar Shrimp & Oyster Co. v. Stone, 221 Miss. 519, 73 So.2d 109.

In the case at bar personal property was purchased by appellant outside Iowa, delivered by common carrier to Hamburg and there removed from the carrier. At this point movement within the channels of interstate commerce ended. Actually the interstate flow ceased at that time, and the product came to rest in this state for use as aforesaid. Furthermore, it was not again placed in the stream of interstate traffic until used by the nursery within this state.

VI. But appellant takes the position a use tax assessment is not here legally permissible by reason of our holding in Bruce Motor Freight, Inc. v. Lauterbach, 247 Iowa 956, 77 N.W.2d 613. For reasons heretofore set forth we are not so persuaded.

It is to us evident Michigan-Wisconsin Pipe Line Co. v. Johnson; Northern Natural Gas Co. v. Lauterbach; and Chicago B. & Q. R. Co. v. State Tax Comm., all supra, are factually more comparable and controlling.

In fact there exists no legal impediment to the assessment and collection of the Iowa use tax upon tangible personal property purchased in another state and brought into Iowa, if no sales or use tax has been previously assessed against it, where there exists a "taxable moment" at the end of its initial interstate transportation, during which it is put to use by the purchaser before being again returned to the flow of interstate commerce.

We now hold Inter-State Nurseries' out-of-state purchased catalogues, flyers and envelopes, addressed and packaged by it on delivery within this state, for advertising purposes, constituted an in-state use which must be construed as a nonexempt taxable event. And, the tax here challenged was a legally and constitutionally proper assessment of an excise tax upon use by appellant of its property within this state, not a property tax.

Affirmed.

All Justices concur.