GREENWOOD v. CITY OF EL PASO et al.
No. 4426.

Court of Civil Appeals of Texas. El Paso.
March 27, 1945.

Potash & Cameron, of El Paso, for appellant.

Travis White, City Atty., Reuben F. Momsen, Asst. City Atty., and Abner S. Lipscomb, all of El Paso, for appellee.

PER CURIAM.

This is an appeal from the judgment of the District Court of El Paso County, 41st Judicial District. Fremont C. Greenwood, hereafter referred to as the relator, sought a writ of mandamus against J. E. Anderson, as Mayor of the City of El Paso, and W. R. Collins, its City Clerk, hereinafter called respondents, to compel them to place his name as an independent candidate for Alderman, Place No. 3, on the official ballot of election to be held April 10, 1945 in the City of El Paso. The City of El Paso and J. J. Walden, Jr., were parties defendant in the action. J. J. Walden was duly nominated as the candidate for Alderman Place No. 3 at a city-wide Democratic primary election held February 17, 1945. The trial court refused the writ of mandamus. The relator Greenwood has perfected this appeal. Judgment of the trial court was rendered on the 22d day of March, 1945;

transcript was filed here March 23, 1945. With the filing of the transcript, the parties all filed briefs and joined in a motion that submission be advanced. This motion was granted and the case was argued orally on March 26, 1945.

This appeal is before us on the following stipulation:

"It is agreed by all parties to this suit:

"That the sole issue in this cause is whether the Nomination Petition filed on behalf of an Independent Candidate for Alderman of the City of El Paso at the City Election to be held April 10, 1945, must contain five hundred (500) qualified signers, or five (5) per cent of the entire vote cast in the City of El Paso at the General State and County Election held November 7, 1944, whichever figure is lower, or on the other hand whether said Nomination Petition need contain only five (5) per cent of the entire vote cast in the City of El Paso at the last preceding General City Election held in April, 1943.

"It is stipulated that all parties were properly before the Court and the above stated issue was sufficiently raised by proper pleadings and by the agreed facts.

"It is further stipulated that if the proper basis for computing the number of signers required is the 1944 General State and County Election the number of signers on said Nomination Petition was insufficient, but if the proper basis for computing the requisite number of signers is the City General Election of 1943, then the number of signers on said Nomination Petition was sufficient.

"It is further stipulated that this statement shall be copied into the transcript in lieu of all parts of the record except the Judgment itself, subject to the right of any Appellate Court or any Party to bring up any omitted part of the record which may hereafter be found necessary for a proper determination of the case."

Articles 3159 to 3162, Revised Statutes of 1925, govern as to the printing of the name of a non-partisan or an independent candidate on the official ballot in the column for independent candidates. Articles 3159, 3160, and 3161, relate to such candidates for a state office to be voted for throughout the state, for congressional, supreme judicial, senatorial, representative, flotorial or judicial district office. Article 3162 is as follows: "Independent candidates for office at a county, city or town

election may have their names printed upon the official ballot on application to the county judge, if for a county office, or to the mayor, if for a city or town office, such application being in the same form and subject to the same requirements herein prescribed for applications to be made to the Secretary of State in case of State or district independent nomination; provided, that a petition of five per cent of the entire vote cast in such county, city or town at the last general election shall be required for such nomination."

■ The question posed is: does the term "last general election" as applied to this case mean the City Election held in April of 1943 as contended by relator, or the General Election of the 7th day of November 1944 as asserted by respondents? In determining this question, the intention of the legislature must be the sole guide. It is not for a court to determine what would be the wiser or better provision, but what the legislature did provide.

■ The words "general election" would, standing alone, mean the state-wide election held in pursuance of general law every two years, which election is for the selection of state, district, county and precinct offices. This is a popular meaning of the term. It is a fundamental rule of statutory construction that unless some good reason appears to the contrary, words used in the statute would be construed by the courts in accordance with their popular and generally understood meaning. Austin v. Strong, 117 Tex. 263, 1 S.W.2d 872, 3 S.W.2d 423, 79 A.L.R. 1528; Bell v. Indian Live Stock Co., Tex.Sup., 11 S.W. 344; 50 Amer.Jur. 227, Sec. 238.

Article 2930, Vernon's Annotated Civil Statutes, provides for this general election and in such article it is named as such. In Article 3159 there can be no question but that the generally understood general election is meant. In Article 3162, as applied to the nomination of independent or non-partisan candidates for county office, it can only mean the general election. This is necessarily so because only at such elections are county and precinct officers thereof chosen.

■■ 25 R.C.L., page 995, par. 238, lays down this principle: "A word repeatedly used in a statute will be presumed to bear the same meaning throughout the statute unless there is something to show there is another meaning intended."

This principle seems to be sound and is thought to have been generally accepted. In Article 2934, it is true the words "general city or town election held therein" make it unmistakable, of course, that the words "general election" are not to be there understood as the term "general election" is commonly and generally understood. It may be that the term "general election" taken with its context may refer to the periodical elections held by cities for the selection of municipal officers. Article 3164 uses the term "regular city election." There we think by context the words "regular city election" mean the same as "general city election", as such words are used in Article 2934. In short, a regular city election and a general city election are the same thing as used in the two provisions.

■ Relator urges that in the light of the oath required by Article 3160 of a signer of application for one to be placed on the ticket as a non-partisan candidate, that the requirement of a number of voters equalling five per cent of the entire vote cast in such county, city or town at the last general election shall be required for such nomination, contained in Article 3162, as applied to a city, means five per cent of the vote at the last general city election rather than the general election as popularly understood. Article 3160 provides in relation to the oath, among other things, "I am a qualified voter at the next general election under the constitution and laws in force, and have signed the above application * * *."

The argument is that, as applied here, such affidavit must relate to the city election to be held in the future. This we think is correct, that it does relate to his qualification to vote at the city election which is in contemplation. Even though this be true, we do not think this impels the conclusion that the number of votes cast at the last city election is necessarily the standard required in determining the number required to place the name of an independent or non-partisan candidate on the official ballot. Article 3162 adopts as to county, city and town elections the requirements of the preceding three articles. The only express change therein is that the application be addressed to the County Judge and Mayor as the case may be and the percentage of voters is made higher.

■ A general election is held in November every two years in each city and

county of the state. True, no city officials are chosen at such election, but the voters voting in the city at such general election are ordinarily qualified voters in the next city election. It was a matter of judgment for the legislature as to whether the standard of the last city election should be used or that of the last general election. In our opinion, it shows the latter standard. Either would be a practicable and workable standard. Whichever be applied, the voters of the city would make the nomination.

■ It is elementary that where a statute has not received construction by the courts, that the construction of the officer or officers charged with the administration thereof is entitled to careful and respectful consideration by the courts. We have no means of knowing how this statute has been generally construed by the mayors of the cities of the state. The question seems to have arisen once before in the City of El Paso. There has been exhibited to us on the argument of this case an opinion rendered to the City Council on March 24, 1933 in relation to this matter. This opinion was written by the Honorable Theodore Joseph, now deceased. It was carefully prepared and intrinsically evidences great ability and legal scholarship. The question here presented was then carefully and conscientiously considered by the Mayor of the City of El Paso. The conclusion was arrived at that the standard to be applied in the case parallel to this one was that of the last general election as distinguished from the last city election. The present respondent followed the precedent set by one of his predecessors. We have assumed that action was taken in accordance with Mr. Joseph's opinion, which we are informed was concurred in by the City Attorney and his Chief Assistant.

The parties to this appeal have urged that we decide same. Each side has in every way facilitated the submission of the case. We have no doubt that if it is possible to do so, they will continue to cooperate to the end that the Supreme Court may pass upon this question which is of state-wide interest and importance.

■ The situation here presented as to time is about as follows: The city Democratic Primary was held February 17th; the application to the Mayor was presented on March 19, 1945, the last day within thirty days prescribed by the law. The time for absentee balloting has arrived for the election to be held on April 10, 1945. In our opinion, the cases of Benavides v. Atkins, 132 Tex. 1, 120 S.W.2d 415; Iles v. Walker, Chief Justice, 132 Tex. 6, 120 S.W.2d 418; Taylor v. Nealon, Chief Justice, 132 Tex. 60, 120 S.W.2d 586, do not necessarily preclude our passing on the merits of this case. Election contests were involved in each case. This is not an election contest. Couch v. Hill, Tex.Civ.App., 10 S.W.2d 170.

In any event, dismissal of the cause or a dismissal of the appeal would not change the status quo even though the question be moot. The affirmance of the trial court's judgment, which we have decided is proper, would in our opinion have the same legal effect though the question be moot. The judgment of the trial court denied the writ of mandamus sought. A judgment of dismissal of the case or dismissal of the appeal would likewise deny the remedy sought.

We have given careful consideration to the note appearing in 132 A.L.R. 574. The cases there cited and digested are only in point by analogy. Most of them relate to the filling of vacancies; most, if not all of them, are from states other than Texas and are made in the light of the applicable election laws of the respective states.

We considered handing down the decision in this case and filing the opinion later, but it is thought best in the event it is desired to obtain a review of the decision by the Supreme Court, to hand down the decision and opinion together. It is realized that this review may not be obtainable, but this opinion has been hastily written to cooperate to that end. If the parties agree thereto, we will promptly pass on any motion for a rehearing that may be filed. No error is found in the judgment of the trial court. It is therefore ordered affirmed.