IOWA POWER AND LIGHT COMPANY, appellee, v. IOWA STATE HIGHWAY COMMISSION and L. M. CLAUSEN, chief engineer for the commission, defendants-appellants; IOWA STATE COMMERCE COMMISSION, defendant.

No. 50759.

(Reported in 117 N.W.2d 425)

OCTOBER 16, 1962.

REHEARING DENIED DECEMBER 11, 1962.

Evan Hultman, C. J. Lyman, James Thomson, Donald L. Beving and Don C. Swanson, all of Des Moines, for defendants-appellants.

Bradshaw, Fowler, Proctor & Fairgrave, of Des Moines, for plaintiff-appellee.

Waldo F. Wheeler and George M. Mariner, both of Des Moines, for Iowa State Commerce Commission.

. Ramsay Clark, Assistant Attorney General, and Roger P. Marquis, Department of Justice, both of Washington, D. C., amici curiae.

Donald A. Wine, United States attorney, of Des Moines, amicus curiae.

Leonard C. Abels and Anthony T. Renda, both of Des Moines, for City of Des Moines, amici curiae.

THOMPSON, J.—The protagonists in the case at bar are on one hand the plaintiff, Iowa Power and Light Company, and the Iowa State Commerce Commission; and on the other the Iowa State Highway Commission and its chief engineer, and the United States of America. The Iowa State Commerce Commission is a named defendant; but in its brief it makes common cause with the plaintiff. The United States of America is not technically a party to the action, but its rights are substantially involved and it has filed a brief as amicus curiae, which supports the position of the Iowa State Highway Commission. The City of Des Moines also upholds this position in an amicus curiae brief. As always, these amici curiae, or friends of the court, are not in fact and in purpose so much friends of the court as of one of the contending factions.

For brevity, we shall hereinafter denominate the plaintiff as the Company; the commerce commission as Commerce; the highway commission as Highway; and the United States of America as United States.

The crucial question in the case is one of jurisdiction of the two contending state administrative bodies, Commerce and Highway, in permitting or denying the construction of utility lines along and upon the rights-of-way of federal interstate highways in the state. While the arguments have taken a wide range, we think the determination which must be made is pointed out by the state statutes governing the location of these utility lines and those regulating controlled-access highways.

On November 14, 1958, the plaintiff made application to Commerce for a franchise to erect and maintain a line for the transmission of electrical energy along and within the right-of-way of certain segments of Interstate Highway Nos. 35-80 near the city of Des Moines, but outside the limits of any city or town. In so doing, the plaintiff was claiming the right to proceed in

accordance with chapter 489 of the Code. Highway filed objections; but on June 9, 1959, Commerce filed its decision granting the franchise as asked, subject to any question of its legality which it said must be determined by the courts. Highway, still maintaining its right to decide whether utility lines might be constructed along and upon the rights-of-way of controlled-access highways over which it had authority, refused to designate the location of the utility line and in effect to honor the franchise granted by Commerce. Thereupon this declaratory-judgment action was brought by the plaintiff for a determination of its rights. The trial court upheld the franchise, the right of Commerce to grant it, and of the plaintiff to construct its lines accordingly.

I. Chapter 489 of the Code provides for applications for franchises for the erection, maintenance and operation of electric transmission lines over or across any public highways outside of cities and towns in the state. It was under this chapter that the plaintiff made its application to Commerce, and likewise under which it was granted. There is no question but that this chapter governs the present situation, unless its provisions have been superseded by chapter 306A, as Highway contends.

Chapter 489 has been a part of the Iowa statutory law for many years. Chapter 306A, however, was enacted by the Fifty-sixth General Assembly as chapter 148 of its Acts, and became law on July 4, 1955. It is clearly a later enacted statute. It is also a special statute, while chapter 489 is a general one. Chapter 489 pertains to all highways outside of cities and towns; chapter 306A only to controlled-access highways. So if there is a conflict, if the two statutes cannot be fairly reconciled, chapter 306A must govern. Andreano v. Gunter, 252 Iowa 1330, 1335, 110 N.W.2d 649, 651; Shelby County Myrtue Memorial Hospital v. Harrison County, 249 Iowa 146, 152, 153, 86 N.W.2d 104, 108, 109, and citations.

The plaintiff and Commerce urge that repeals by implication are not favored, and will not be found unless there is a clear intent. This is the law. State ex rel. McElhinney v. All-Iowa Agricultural Association, 242 Iowa 860, 867, 48 N.W.2d 281, 285, and citations. It is also true that the omnibus repeal of

all laws in conflict with chapter 306A, a part of the chapter as originally enacted, adds little if anything. State v. Blackburn, 237 Iowa 1019, 1022, 22 N.W.2d 821, 823. It may, however, show that the legislature realized certain previous statutes may be in conflict with the later one.

II. We come to the decisive question of whether there is real conflict between chapter 489 and chapter 306A. We have pointed out that the former is a general, the latter a specific statute. We held in Warren v. Iowa State Highway Commission, 250 Iowa 473, 479, 93 N.W.2d 60, 64, that there is a real conflict between chapters 306 and 306A as to closing off secondary roads; and that chapter 306A, the special and later enacted one, must govern. Here we must analyze chapter 306A to decide whether it can or cannot be reconciled with chapter 489.

The question is, does chapter 306A so clearly show the intent of the legislature to give the highway authorities, in this case Highway, the power to determine all matters concerning controlled-access highways, including the right to construct utility lines along and upon their rights-of-way, that it must be held to be in irreconcilable conflict with chapter 489? We are constrained to answer in the affirmative.

Section 306A.1 of chapter 306A expresses the legislative determination that the chapter "is necessary for the immediate preservation of the public peace, health, and safety, and for the promotion of the general welfare." Section 306A.2 defines controlled-access highways; and Interstate 35-80 is clearly within this category. The plaintiff points out that under this definition these highways are not a separate class, but may be either primary or secondary roads. This may be conceded; except it must be pointed out that we are here dealing only with an interstate federal highway and our decision applies only to it, although logically it appears the same reasoning would apply to any controlled-access road.

Section 306A.3 we consider of great importance upon the point here involved, and we set it out in full:

"Authority to establish controlled-access facilities. Cities, towns, and highway authorities having jurisdiction and control over the highways of the state, as provided by chapter 306, acting

alone or in co-operation with each other or with any federal, state, or local agency or any other state having authority to participate in the construction and maintenance of highways, are hereby authorized to plan, designate, establish, regulate, vacate, alter, improve, maintain, and provide controlled-access facilities for public use wherever such authority or authorities are of the opinion that traffic conditions, present or future, will justify such special facilities; provided, that within cities and towns such authority shall be subject to such municipal consent as may be provided by law. Said cities, towns, and highway authorities, in addition to the specific powers granted in this chapter, shall also have and may exercise, relative to controlled-access facilities, any and all additional authority now or hereafter vested in them relative to highways or streets within their respective jurisdictions. Said cities, towns and highway authorities may regulate, restrict, or prohibit the use of such controlled-access facilities by the various classes of vehicles or traffic in a manner consistent with section 306A.2."

The significant language in the foregoing section is that the highway authority is authorized to "plan, designate, establish, regulate, vacate, alter, improve, maintain, and provide controlled-access facilities." The word "regulate" is particularly important. The legislature did not say that the highway authority might "regulate" the facility except for the right of Commerce to grant franchises to public utilities for the building and maintenance of transmission lines. "Regulate" is defined by Webster's Third New International Dictionary as meaning "to govern or direct according to rule; * * * make regulations for or concerning."

The plaintiff in argument points to the final sentence of section 306A.3, supra, which says the highway authorities may "regulate, restrict, or prohibit" the use of controlled-access facilities by various classes of vehicles or traffic. It is the apparent thought of counsel at this point that this defines the extent of the "regulation"; that it applies only to traffic. But the word "regulate" is first used in connection with the construction and maintenance of the road. As we read the statute, it gives the right to "regulate" first, the building and maintenance of the highway, and second, traffic after it is in operation.

III. Any doubt as to the proper construction of section 306A.3 as being in conflict with chapter 489 is removed by what now appears as section 306A.10. This is a part of the Laws of the Fifty-eighth General Assembly, enacted in 1959, as chapter 205 of the Session Laws. We quote it:

"Notice to relocate—costs paid by state. Whenever the Iowa state highway commission shall determine that relocation or removal of any utility facility now located in, over, along, or under any highway or street, is necessitated by the construction of a project on routes of the national system of interstate and defense highways including extensions within cities and towns, the utility owning or operating such facility shall relocate or remove the same in accordance with statutory notice. The costs of relocation or removal, including the costs of installation in a new location, shall be ascertained by the Iowa state highway commission or as determined in condemnation proceedings for such purposes and paid by the state out of the primary road fund as part of the cost of such federally-aided project."

This gives Highway power to order the removal of any utility facility presently located "in, over, along, or under" any highway or street, necessitated by construction of an interstate highway and provides the costs of "relocation or removal" shall be paid by the state. We upheld the constitutionality of this statute in Edge v. Brice, 253 Iowa 710, 717, 113 N.W.2d 755, 758, and we there also said: "The General Assembly had the power to require relocation at the cost of the utilities * * *."

It would seem absurd to say that Highway may not prevent the construction of a utility line upon the right-of-way of a part of the national system of interstate roads, but after it is built may order its removal at public expense. We think section 306A.10, supra, shows the legislative belief that Highway already had power to prevent construction of new utility facilities along these highways; that it realized they might be harmful and adverse to the public interest when already so located; and that in its discretion Highway might so find and refuse the right to those seeking new constructions. As the plaintiff points out, the highways are not limited to the immediate portion actually

traveled, but extend from one boundary of the right-of-way to the other. All parties agree on this.

So we think Highway might well, and as a proper exercise of discretion, refuse to permit utility facilities along and upon the rights-of-way. It is urged that the utility lines will be at the outer edges of the right-of-way, and so harm or inconvenience no one. There are at least two answers to this that readily occur. Interstate highways, in fact, all highways, are subject to increasing traffic burdens; it seems certain that in the foreseeable future it will be desirable to widen many of them and so use a greater part of the right-of-way for carrying traffic; and again, the presence of utility poles along the right-of-way adds considerably to the hazard when a driver on the highway loses control of his vehicle or for any reason is diverted to the shoulder or generally untraveled portion of the right-of-way. Collision with a heavy pole is always a dangerous possibility under such circumstances.

The legislature seems to have covered all contingencies, at least as to interstate highways, by section 306A.3, which gives Highway the authority to plan, construct, maintain and regulate them; and by section 306A.10, which takes care of the possibility that utility facilities may already be in place, in which case they may be removed.

The plaintiff urges that section 306A.10, supra, adds nothing to chapter 319 of the Code. This chapter provides for the removal of obstructions in highways. Apparently this includes fences, and utility poles which may be so located as to be obstructions to the building or use of the roads; and section 319.4 provides they shall be removed to, or relocated upon, "such line on the highway as the state highway engineer or county engineer may designate * * * ." If the plaintiff's position is correct, section 306A.10 adds nothing except that the cost of the removal or relocation from or on interstate highways is to be paid by the state instead of by the owners of such facilities. If such had been the intention of the legislature, it could readily have repealed or amended section 319.6, which provides for the cost of said removal to be paid by the owners; the rest of section 306A.10 is meaningless. We do not find in section 306A.10 any provision for relocation on the highway, as is specified in section 319.4,

supra, nor any reference to chapter 319, unless it be in the clause "shall relocate or remove the same in accordance with statutory notice." There is a provision in chapter 319, section 319.3, that says notice shall be served in the same manner that is required for original notice. "Statutory notice" is presumably intended by the legislature to be the same in manner and content as that provided for original notices; and we see no reason for the conclusion that section 306A.10 was meant as nothing more than an addition to or amendment of chapter 319.

Reading and construing section 306A.3 and section 306A.10 the fair intent of the legislature as deduced from what it said is that the highway authorities are given full supervision over all controlled-access highways, including planning, designating, establishing, vacating, altering, improving, maintaining, and above all, regulating them; that this means that the highway authorities have the right to determine whether utility facilities shall be placed upon and along the rights-of-way of such roads. This is strengthened by section 306A.10, which we consider a companion statute, which gives Highway the right to relocate or *remove* such facilities already existing.

IV. The plaintiff urges that the legislative intent may be deduced from the fact that the legislature failed to enact Senate File 181 of the Fifty-eighth General Assembly. This would have specifically provided that no electric transmission lines should be placed along and upon any interstate highway without the consent of Highway. Cited as authority is Northern Natural Gas Co. v. Lauterbach, 251 Iowa 885, 893, 100 N.W.2d 908, 913, where we said that the failure of the legislature to adopt an offered amendment which would have set aside our holding in Michigan-Wisconsin Pipe Line Co. v. Johnson, 247 Iowa 583, 589, 73 N.W.2d 820, 824, was an indication of its intention that holding should remain the law. But there is a clear distinction. There the law was settled by the decision in the Michigan-Wisconsin case. No interpretation of chapter 306A was before the legislature when it failed to act on the amendment which would have made specific the intent to give Highway full jurisdiction over the installation of electric lines on interstate highways. This action of the legislature is as consistent with the

thought that it considered chapter 306A was sufficiently clear in giving such jurisdiction as it is with the contention that it did not intend to give it. Nothing is added to either side of the controversy by this action, or failure to act, of the General Assembly.

V. Considerable emphasis is given by the plaintiff to its argument that certain rules and regulations adopted by Highway are beyond its power. These spell out Highway's contention that it has the right to "regulate" the controlled-access highways. The plaintiff says no administrative body may adopt such rules unless they are supported or authorized by state statute; that it may not make law under the guise of such regulation. No authority need be cited for this proposition; it must be conceded. But our holding that the existing law as embodied in chapter 306A gives Highway the right to control the installation of utility facilities makes the argument groundless. If Highway has the right to such control, as we have determined, it may refuse to permit such installations without formal regulations, or it may adopt proper rules for implementing its refusal.

VI. Much time and effort are devoted by the contending parties to the question whether federal regulations in effect at the time of the agreements between the Department of Commerce and Highway for the construction of the segments of Interstate Highway Nos. 35-80 now involved here were sufficiently specific to deny utility facilities the use of the right-of-way; or whether later adopted regulations apply. Section 306A.7 of chapter 306A gives the highway authorities the right to enter into agreements with the Federal Government respecting the "* * * planning, establishment, improvement, maintenance, use, regulation, or vacation" of controlled-access facilities. This seems broad enough to permit Highway to enter into agreements with United States that the latter's regulations will govern such matters as the construction of utility facilities along and upon the rights-of-way of interstate highways. Whether such regulations existed at the time of the agreements for the particular segments here involved, or whether they have been adopted later and now govern, we do not find it necessary to determine. Our holdings in Divisions I through IV decide the points at issue. Inevitably, the Federal Government, which furnishes the greater part of the funds for

the construction of interstate highways, will assert the right to control in essential details of construction and operation. In its amicus curiae brief, it asserts the right, in fact the duty, to withhold payment of road funds to the state and to deny approval of future projects if its regulations, specifically those which it contends prohibit construction of utility facilities along rights-of-way, are violated. No one need be surprised at this attitude. In passing, however, it may be helpful to point out section 1.11(c) of chapter 1, Title 23, of the Regulations for the Administration of Federal Aid for Highways as adopted by the Bureau of Public Roads of the Department of Commerce, effective February 21, 1957. Here we find: "The rights-of-way provided for Federal-aid highway projects shall be held inviolate for public highway purposes. No project shall be accepted as complete until all encroachments have been removed from the rights-of-way. * * * neither shall any portion of the rights-of-way be used in connection with any private business or undertaking." It seems a logical argument that the use of a part of the right-of-way for the transmission lines of a private utility is a use "in connection with a private business or undertaking."

VII. Our conclusion is that utility facilities may not be constructed along controlled-access interstate highways without the consent of the Iowa State Highway Commission, which now has sole jurisdiction over such construction, maintenance and regulation. The cause is reversed and remanded for a decree in conformity with this opinion.—Reversed and remanded.

All JUSTICES concur except LARSON, J., not sitting.