**CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY, Appellee,**

**v.**

**IOWA STATE HIGHWAY COMMISSION, Appellant.**

**No. 53726.**

Supreme Court of Iowa.

Dec. 15, 1970.

Richard C. Turner, Atty. Gen., Henry L. Holst, Special Asst. Atty. Gen., and Robert T. Lego, Asst. Atty. Gen., for appellant.

Bennett A. Webster, Des Moines, for appellee.

BECKER, Justice.

Plaintiff Railroad sought and received a temporary injunction to enjoin the High-way Commission from proceeding with condemnation action against plaintiff to acquire certain highway rights across plaintiff's railroad tracks in Scott County. The temporary injunction was granted. Upon proper application this court granted leave to appeal from the interlocutory order granting a temporary injunction. After due consideration of the issues presented, we affirm.

The dispute is over which of two statutory procedures is proper at this time. Proposed I–280 is to be a limited access highway in Scott County. The Highway Commission proceeded to acquire its right of way under chapter 306A, Code of Iowa, 1966. It contends acquisition of a right to go over or under a railroad is exclusively controlled by section 306A.10.[1] The railroad relies on sections 478.21 to 478.23.[2]

1. *"Notice to relocate—costs paid by state.* Whenever the Iowa state highway commission shall determine that relocation or removal of any utility facility now located in, over, along, or under any highway or street, is necessitated by the construction of a project on routes of the national system of interstate and defense highways including extensions within cities and towns, the utility owning or operating such facility shall relocate or remove the same in accordance with statutory notice. The costs of relocation or removal, including the costs of installation in a new location, shall be ascertained by the Iowa state highway commission or as determined in condemnation proceedings for such purposes and paid by the state out of the primary road fund as part of the cost of such federally-aided project." Section 306A.13 includes railroads in the definition of utilities.

2. *"Railway and highway crossing at grade.* Wherever a railway track crosses or shall hereafter cross a highway, street or alley, the railway company owning such track and the state highway commission, in the case of primary highways, the board of supervisors * * * or the council of the city or town * * * may agree upon the location and manner of crossing, * * * and upon the expense each party shall pay for such changes, * * *." (§ 473.21).
*"Disagreement—application—notice.* If the railway company and said highway authorities cannot agree upon the changes to be made, either party may make written application to the state commerce commission, setting forth the changes and alterations desired, and said commission shall fix a date for hearing and give the other party * * *." (§ 478.22).
*"Hearing—order.* The state commerce commission shall hear and determine such application, taking into consideration the necessity of such changes and the expense thereof, the location of any crossing or crossing protection and the manner in which it shall be constructed and maintained, or whether a crossing is to be eliminated and the provisions therefor, and may make such order in relation thereto as shall be equitable, including authority to condemn and take additional land for such purposes when necessary, and shall determine what portion of the expense shall be paid by any party to such controversy. In determining what portion of the expense shall be paid by each party to such controversy the commission may consider the ratio of the benefits accruing to the railroad or the governmental unit or both as it bears to the general public use and benefit and such benefits shall be consistent with the standards adopted for similar purposes by the United States bureau of public roads under the federal aid highway Act of 1944 as amended." (§ 478.23).

Due to the nature of the terrain, the plans call for the highway to pass under the railroad at the location in question. This deviation from the normal pattern has caused the present litigation.

The parties managed to agree on all matters save one; namely who is to own and maintain the new railroad bridge once it is built. Both sides agree on all necessary technical and engineering plans. By agreement construction is going ahead despite this litigation and the full cost of building a railroad bridge will be borne by the Highway Commission. The railroad does not claim damages for the taking of its rights if maintenance is to be borne by the Highway Commission. But the railroad contends it does not presently need and does not want a bridge at the proposed site. Therefore it objects to being saddled with the repair, maintenance and risk of loss attendant on the upkeep and ownership of this new structure.

The railroad took the controversy to the Commerce Commission under authority of sections 478.22 et seq. A few days later the Highway Commission started condemnation proceedings as provided in section 306A.10. Thereupon the railroad sought an injunction against continuation of the condemnation proceedings until the controversy before the Commerce Commission could be decided. The trial court held a determination of the Commerce Commission controversy involved the same substantive rights as the condemnation proceedings and granted the injunction. We hold the injunction was properly granted.

I. We do not pass on the merits of this controversy; i. e., who is to maintain the bridge or what, if any, damages are due the railroad. The sole question before us is whether it was proper to enjoin further action under the attempted condemnation proceedings.

II. Several well recognized rules apply. Statutes relating to the same subject matter or closely allied subjects are "in pari materia". They are to be construed together in light of their common purpose and intent so as to give meaning and effect to all of them. They should be construed so as to produce a harmonious legislative system if that can be done. Each statute should be afforded a field of operation. Thus, repeal of a statute by implication is not favored and will not be upheld unless absolutely necessary. Northwestern Bell Tel. Co. v. Hawkeye State Tel. Co., 165 N.W.2d 771, 774 (Iowa 1969).

If statutes are in conflict special statutes take precedence over general statutes. Warren v. Iowa State Highway Comm., 250 Iowa 473, 93 N.W.2d 60 (1959). When authority is delegated to an administrative body such authority is primary and exclusive unless a contrary intent is clearly manifested by the legislature. Elk Run Telephone Co. v. General Telephone Co., 160 N.W.2d 311, 315 (Iowa 1968).

III. The Highway Commission contends chapter 306A gives it sole and exclusive jurisdiction over construction and maintenance of controlled access highways. It argues chapter 306A is in irreconcilable conflict with section 478.21 et seq. and the latter sections are entirely inoperative as applied to the present controversy. We cannot agree.

In Iowa P. & L. Co. v. Iowa State Hgwy. Comm., 254 Iowa 534, 117 N.W.2d 425 (1962), we recognized that chapter 306A, especially section 306A.3, gives the Highway Commission a very broad power to "plan, designate, establish, regulate, vacate, alter, improve, maintain, and provide controlled access facilities". We held this broad power, coupled with the powers granted in sections 306A.10 et seq. repealed by implications the sections of chapter 489 which gave the Commerce Commission power to grant franchises to maintain power lines along limited access highways. However, in this case we are dealing with different code sections, with different and more limited authority, and with a differ-

ent legislative history. Cf. Division V., infra.

Section 306A.10 is especially significant. Admittedly this section outlines a broad authority over "relocation or removal of any utility facility now located in, over, along, or under any highway or street". These sections do not refer to railroad crossing problems. Such problems are specifically treated at sections 478.22 et seq. The same session of the legislature that adopted 306A.10 and 306A.12 (1959 Acts of the 58th General Assembly, chapter 205) also amended section 478.23 (1959, Acts of the 58th G.A., chapter 320) by adding the present last sentence thereto. This sentence refers to standards adopted for similar purposes by the United States Bureau of Public Roads under the Federal Aid Highway Act of 1944. Section 306A.12 also refers to the Federal Aid Highway Act in that it prohibits reimbursement for relocation or removal unless 90 percent of the cost be provided by federal aid.

Thus the legislature at the same session gave broad powers over limited access highway construction and maintenance to the Highway Commission; left the Commerce Commission's authority over railroad crossings intact; but added a new standard to the Commerce Commission's authority. This standard related to the federally aided highways program which is recognized in both statutes.

We conclude the legislature intended to preserve in the Commerce Commission the jurisdiction and authority to determine controversies between railroads on the one hand and highway authorities on the other when the narrow purpose of the controversy deals with *railroad crossings.*

IV. Both sets of statutes are special in nature. Each refers to specific situations. As between the two sets, sections 478.22–24 are the more specific, dealing as they do only with railroad crossing situations. Sections 306A.10 et seq. deal with all enumerated utility uses located in, over, along or under any highway. Under the familiar rule cited above, the Commerce Commission authority, being the more specific, takes precedence over the Highway Commission authority, which is more general in nature.

V. The Highway Commission relies heavily on Iowa P. & L. Co. v. Iowa State Highway Comm., supra. We think the case is not factually similar. There the Commerce Commission had authorized the power company to maintain lines along a limited access highway contrary to the Highway Commission's order and wishes. Chapter 489 gives the Commerce Commission power to grant franchises for erection, maintenance and operation of transmission lines over, along and across any public highway outside of cities or towns. We said, "There is no question but that this chapter governs the present situation unless the provisions have been superseded by chapter 306A." We held chapter 489 was general in nature, prior in time and in irreconcilable conflict with the provisions of chapter 306A. Special emphasis was put on the enactment of 306A.10 which gave the Highway Commission the right to relocate or remove existing facilities.

The difference between the case cited and this case lies both in the facts presented and the statutes construed. In the Iowa P. & L. Co. v. Iowa State Highway Comm., case the claim was to use the area *along* the length of the highway right of way, not across it. It was in fact a *use* of the highway for right of way purposes rather than a mere necessary crossing.

More important, the statute relied upon was general in nature and did not deal with a precise situation to the apparent exclusion of chapter 306A.

What the case does stand for is that if the legislature had evidenced an intent to make the Highway Commission's power subject to that of the Commerce Commission, it could do so by appropriate language.

Here we have the opposite situation. The legislative action in amending, rather than repealing section 478.23 and in relating the amendment to the Federal Aid Highway Act of 1944 evidenced an intent to maintain in the Commerce Commission the decisional process as to controversies concerning railroads vis-a-vis highways where the two must cross.

VI. We have carefully considered the Highway Commission's argument urging us to hold sections 478.21 et seq. do not apply to *new* highway crossings. The thrust of the argument seeks to curtail the power of the Commerce Commission and enlarge the power of the Highway Commission. In the area of railroad crossing controversies we do not so read the statute. The purpose of the statutes seems to be to provide an independent expert administrative forum to resolve the technical difficulties and allocate costs due to the competing interest of two major means of transportation; one owned by the public utility railroad and the other owned by the State itself.

■ The Highway Commission's argument is based primarily on more detailed verbiage in the earlier statutes which was subsequently replaced by the broad phrase, "Wherever a railway crosses or shall hereafter cross a highway at grade * * *." We decline to hold such language was intended to limit the Commerce Commission's authority by deleting jurisdiction over newly projected highways, streets and alleys. We believe the intent of the legislature was to retain jurisdiction in the Commerce Commission over all such crossings whether existing or created by new facilities. Whether the new crossing was due to relocation or creation of a new highway, street or alley or by relocation or creation of a new railroad track, the problems remain the same. The revised language of the 40th Extra General Assembly, House File 190, § 19, referred to by the Highway Commission (now in section 478.-21) is broad enough to cover crossing cre-

ated by new highway construction as well as by new railroad construction.

VII. The Highway Commission also raises a constitutional argument based on Article I, § 18 of the Iowa Constitution which guarantees:

"Private property shall not be taken for public use without just compensation first being made, or secured to be made to the owner thereof, as soon as the damages shall be assessed by a jury, * * *."

■ The Highway Commission assumes the orders of the Commerce Commission will deal with damages which would properly be before a condemnation jury. It wholly fails to consider the law on this subject. The general rule is that where a portion of a railroad is taken for a highway crossing the measure of compensation to the railroad is the diminution in value of the property for railroad use. 4 Nichols on Eminent Domain, 3d Edition, § 15.31; State ex rel. State Highway Comm. v. Conrad, 310 S.W.2d 871, 874 (Mo.1958). Treatment of cost of structural changes as an element of damages in condemnation cases is the subject of at least two diverse rules. 4 Nichols on Eminent Domain, 3d Edition, § 15.31[2]; 29A C.J.S. Eminent Domain § 147b, p. 627. Iowa has not directly passed on the subject under our statutes as now written. Cf. City of Albia v. Chicago, Burlington & Quincy R.R., 102 Iowa 624, 71 N.W. 541 (1897); Chicago, Burlington & Quincy R.R. v. Board of Supervisors, 182 F. 291 (C.C.Iowa 1910).

Whether the cost of structural changes are a proper element of damages or not may be argued and finally determined when and if the condemnation proceedings are finally prosecuted. A recent case holding such costs are not properly a part of condemnation damages is Florida E. Coast Ry. v. Martin County, 171 So.2d 873 (Fla. 1965).

VIII. The railroad contends it would suffer irreparable damage unless the temporary injunction is granted. It is sup-

ported by our language in Stellingwerf v. Lenihan, 249 Iowa 179, 183, 85 N.W.2d 912, 915 (1957):

"Appellant has no adequate remedy at law. Appellant cannot raise the legal question on appeal in a condemnation action. The only question involved in eminent domain procedure is the value of the property taken. Section 472.25, 1954 Code, I.C. A., provides: 'Right to take possession of lands. Upon the filing of the commissioners' report with the sheriff, the applicant may deposit with the sheriff the amount assessed in favor of a claimant, and thereupon the applicant shall, except as otherwise provided, have the right to take possession of the land condemned and proceed with the improvement. No appeal from said assessment shall affect such right, except as otherwise provided.' * * *." Before the complex problems arising out of highway-railroad crossing condemnation can be intelligently treated the statutes providing for determination of the reciprocal duties and obligations of the parties should first be utilized. The trial court wisely determined that ordinarily condemnation proceedings could not fairly be held until such controversies were settled.

The usual motion to dismiss or for continuance would not suffice because, unlike most actions, condemnation commences as an administrative proceedings, reaching the court only by way of appeal. Chicago, R. I. & P. R. Co. v. Stude, 346 U.S. 574, 74 S.Ct. 290, 98 L.Ed. 317 (1954); Iowa Code, 1966, chapter 472. Thus time for action before the Commerce Commission could not be afforded except by equitable injunctive relief. The circumstance that the progress of the project was not being delayed militated in favor of the trial court's action.

■ While we do not agree that the matter before the Commerce Commission necessarily involves the same substantive rights as those to be determined in a condemnation proceedings, we do agree the trial court, under the facts here presented,

properly exercised its injunctive power to stay condemnation proceedings until the issues contemplated by section 478.21 et seq. could be determined.

The Highway Commission raises several other points which have been duly noted. In light of what has been said we do not extend this opinion by further consideration of those arguments.

Affirmed.

All Justices concur.