

# THE ATTORNEY GENERAL
## OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

December 11, 1990

Honorable Bob Bullock
Comptroller of Public
    Accounts
L.B.J. Building
Austin, Texas 78774

Opinion No. JM-1256

Re: Imposition of fees on motor
fuels under House Bill 504,
Acts 1989, 71st Leg., ch. 1033,
at 4156 (RQ-1904)

Dear Mr. Bullock:

You ask about the proper construction of House Bill 504, which was enacted by the 71st Legislature and governs the sale of certain mixtures of gasoline and alcohol.[1] The bill requires that the comptroller administer and enforce a program of labelling pumps through which fuel containing ethanol or methanol is sold.

You appear to ask whether the imposition of the fee authorized by subsection (c) of section 9 of article 8614, V.T.C.S., may reach only dealers that deliver or sell motor fuels containing ethanol or methanol or whether it may reach all dealers that deliver or sell motor fuels, regardless of whether those fuels contain ethanol or methanol. However, because both subsections (b) and (c) of section 9 authorize the imposition of fees, we will address both subsections.

We conclude that a fee authorized by subsection (b) of section 9 of the act may reach all persons required to hold a permit as a distributor of motor fuels under chapter 153 of the Tax Code for whom services are performed under that subsection. We further conclude that the additional fee authorized by subsection (c) of section 9 of the act may reach only those dealers who deliver or sell motor fuels containing ethanol or methanol in the amount specified in the article.

---

1. Codified as article 8614, V.T.C.S.

Section 9 of article 8614, V.T.C.S., the section with which you are concerned, provides the following:

(a) The comptroller may adopt rules not inconsistent with this Act for the regulation of the sale of motor fuels containing ethanol and methanol.

(b) The comptroller by rule may impose fees for testing, inspection, statement or record forms, sale of signs, or the performance of other services provided in the administration of this Act.

(c) In addition to the fees authorized by Subsection (b) of this section, the comptroller by rule may impose a fee to be collected on a periodic basis determined by the comptroller from each distributor, supplier, wholesaler, and jobber who deals in a motor fuel subject to regulation under this Act. The comptroller by rule shall prescribe the form for reporting and remitting the fees imposed by and under this section.

(d) The fees and penalties imposed by this Act or by a rule of the comptroller made pursuant to this Act shall be subject to the provisions of Chapter 111 and Sections 153.006, 153.007, and 153.401, Tax Code, except to the extent those sections are in conflict with this Act.

(e) The total amount of fees collected under this Act may not exceed the costs of administering and enforcing the provisions of this Act.

(f) The fees collected under this section may be used only for the administration and enforcement of this Act by the comptroller and shall be deposited in the Comptroller's Operating Fund 062. (Emphasis added.)

We turn first to subsection (b). There can be no doubt that the fee authorized by subsection (b) of section 9 of the act reaches every person required to hold a permit as a distributor of motor fuels under chapter 153 of the Tax Code

for whom services are performed under that subsection, regardless of whether the fuel thus distributed contains ethanol or methanol. Sections 1 and 2 of article 8614, V.T.C.S., taken together, confer explicit authority on certain specified public officers or their authorized agents to test _any_ motor fuel sold in the state. Section 2 of the act provides:

> In order to determine compliance with the standards and for the enforcement of rules adopted under Sections 3, 4, and 5 of this Act, the comptroller of public accounts or an authorized representative of the comptroller, any law enforcement officer at the direction of a prosecuting attorney, or the attorney general may test _any motor fuel_ sold in this state, with or without a complaint about the fuel. (Emphasis added.)

Subsection (2) of section 1 of the act provides: "'Motor fuel' has the meaning given that term by Section 153.001(17), Tax Code."[2]   That subsection of the Tax Code provides: "'Motor fuel' includes gasoline, diesel fuel, liquified gas, and other products that are usable as propellants of a motor vehicle." Thus, since every licensed distributor is subject to testing, inspection, _etc._, every licensed distributor may be subject to the subsection (b) fee, regardless of whether the motor fuel so distributed contains ethanol or methanol. However, imposition of a fee under subsection (b) is limited to those distributors for whom services are performed under that subsection.

We turn now to subsection (c). Three arguments have been adduced in support of the construction that the subsection 9(c) fee reaches all dealers of motor fuels, regardless of whether those fuels contain ethanol or methanol. We find none of the arguments convincing.

First, it is emphasized that the underscored phrase of subsection (c) of section 9 permits a fee to be imposed upon "each distributor, supplier, wholesaler, and jobber who

---

2. Section 153.001 was amended during the 71st Legislature; subsection (17) was renumbered subsection (16). Acts 1989, 71st Leg., ch. 168, § 2, at 550.

deals in a motor fuel subject to regulation under this Act."
(Emphasis added.)    It is argued that all dealers of all
motor fuels are "regulated" under the act, because the motor
fuel of all distributors, suppliers, wholesalers, and
jobbers is subject to testing under section 2.    Therefore,
it is argued, the act by its terms permits the imposition of
the subsection 9(c) fee on all distributors, suppliers,
wholesalers, and jobbers of motor fuels.    At issue is
whether such persons are "regulated" under the act.    We
agree that all dealers of motor fuel are subject to testing;
we do not agree that that factor, standing alone, supports
the assertion that all motor fuel dealers are "subject to
regulation" under the act.

Generally, the term "regulate" has been defined to mean

to fix, establish or control; to adjust by
rule method or established mode; to direct by
rule or restriction; to subject to governing
principles or laws.

Yellow Cab Corp. of Passaic & Clifton v. City Council of
Passaic, 308 A.2d 60, at 63 (N.J. 1973); see also Farmington
River Co. v. Town Plan & Zoning Comm'n of Farmington, 197
A.2d 653 (Conn. 1963); Iowa Power & Light Co. v. Iowa State
Highway Comm'n, 117 N.W.2d 425 (Iowa 1962). We do not
construe testing in this instance to comprise a part of
"regulation." Rather, we construe positive testing for
ethanol and methanol gasoline mixtures to constitute a
prerequisite that must be met in order for the regulatory
provisions of the act to be triggered.

Even a cursory reading of the act supports the
assertion that "regulation" is limited only to those dealers
who sell motor fuel containing ethanol or methanol.    For
example, the caption of House Bill 504 described the bill as
an act "relating to the sale of certain mixtures of gasoline
and alcohol; providing penalties." Section 11 of the act,
governing the effective date of the bill, provides:

This act takes effect January 1, 1990, and
applies only to deliveries or sales, as
applicable, of motor fuels containing ethanol
or methanol that occur on or after that date.
(Emphasis added.)

Sections 3, 4, 5, 6, 7, and 8 of the act refer only to those
motor fuel dealers selling motor fuel containing a certain

specified mixture of ethanol or methanol. Subsection (a) of section 9 confers specific authority on the comptroller to adopt rules not inconsistent with the act "for the regulation of the sale of motor fuels containing ethanol and methanol." And finally, subsection (e) of section 4 of the act provides:

> If the comptroller determines that certain types of motor fuel, such as diesel or liquified petroleum gas, are not sold in this state as mixtures with alcohol in sufficient quantities to warrant regulation of those deliveries under this Act, the comptroller may limit the application of Section 3 of this Act and this section to motor fuels sold in sufficient quantity to warrant regulation. (Emphasis added.)

Language repeatedly used in a statute will be presumed to have the same meaning throughout, unless the context shows that another meaning is intended. Paddock v. Siemoneit, 218 S.W.2d 428 (Tex. 1949); Greenwood v. City of El Paso, 186 S.W.2d 1015 (Tex. Civ. App. - El Paso 1945, no writ). In every instance in the act in which the term "regulate" or "regulation" appears, the term is limited to apply only to those dealers who sell motor fuel containing ethanol or methanol in the prescribed amounts. The comptroller has no authority to promulgate rules governing the sale of motor fuels not containing ethanol or methanol; therefore, such transactions are not "regulated" by the act.

Second, it is argued that a construction limiting the reach of the subsection 9(c) fee to only those dealers whose fuel contains ethanol or methanol would have the effect of subverting the purpose for which the act was passed. It is argued that requiring only those dealers whose motor fuels contain the requisite amount of ethanol or methanol to bear the burden of paying the subsection 9(c) fee will have the effect of creating such economic disincentives that the sale of gasoline containing ethanol or methanol would be discouraged. For two reasons, we disagree. We are unconvinced that such a construction would have such an effect.

First, we do not believe that our interpretation of the statute will subvert the purpose of the act. An examination of the legislative history of House Bill 504 indicates that the legislature sought to require that all dealers that sell motor fuel containing a specified amount of ethanol or

methanol must label  pumps dispensing the  fuel so that  the mixture will be indicated to consumers; in other words,  the evident purpose of the bill  is to protect the consumers  of motor fuel.

The  "Background Information"  section of  the  bill analysis for House Bill 504 provides in relevant part:

> At this  time,  the  State of  Texas  has  no regulations requiring the  labeling of  motor fuel pumps  at  service  stations  or  retail outlets that  dispense mixtures  of  gasoline and alcohol.   <u>A Texas  motorist,  therefore, cannot determine if the motor fuel he or  she is  purchasing  has  a  substantial  alcohol content</u>.  (Emphasis added.)

Bill Analysis, H.B. 504, 71st Leg. (1989).  The "Purpose  of the Bill" section of the bill analysis states:

> The purpose of the bill is to require dealers selling a motor fuel mixture of gasoline  and alcohol to  label the  pumps dispensing  this fuel <u>so that the mixture will be indicated to consumers</u>.  (Emphasis added.)

<u>Id.</u>  The "Section by Section Analysis" of the bill  analysis describes section 2 of the bill in the following way:

> Grants the Comptroller of Public Accounts  or an inspector employed by the Comptroller  the authority to inspect <u>any</u>  motor fuel sold  in the state of Texas.  (Emphasis added.)

<u>Id.</u>

And second, we  do not agree  that our construction  of subsection 9(c) will compel a result that disproportionately burdens those dealers who sell motor fuel containing ethanol or methanol.  The  act, as  it was  introduced, contained  a provision limiting any fee charged to the actual cost of the service to be performed.  Bill Analysis, H.B. 504, 71st Leg. (1989).   The  committee  substitute version,  <u>inter alia</u>, deleted the  provision.   Instead,  section  9  of  the  act confers discretion upon  the comptroller  to allocate  costs among the several fees  that he can  impose, subject to  the limitation that the total amount  of fees collected may  not exceed the costs  of administering the  act.  V.T.C.S.  art.

8614, § 9(e).  We note that an administrative agency, though vested by statute with discretion in its actions, may not exercise its powers in an arbitrary or capricious manner, and the reasonableness of its orders is subject to judicial review.  Industrial Accident Bd. v. O'Dowd, 303 S.W.2d 763 (Tex. 1957); Brown v. Humble Oil & Ref. Co., 83 S.W.2d 935 (Tex. 1935).

Finally, it is argued that letters submitted by the two legislators who sponsored the bill indicate legislative intent that all dealers of motor fuel, not just those dealers who sell fuel containing ethanol or methanol, be subject to the subsection 9(c) fee.  One of the letters states the following:

> The words 'subject to regulation under this Act' were intended only to exclude motor fuels such as diesel and Liquified Petroleum Gas, which were not sold in combination with ethanol and methanol.  It was the intention of the Legislature to have this fee placed on all distributors of gasoline, in order to spread the economic effect of the regulations across all gasoline in the market.

Letter from Jim Horn, State Representative, to Honorable Bob Bullock (Oct. 17, 1989) (discussing H.B. 504).

For two reasons, we do not conclude that the letters are in any way controlling.  First, following our receipt of these letters, we examined the legislative history for statements in the public record that would confirm that construction of subsection 9(c).  Our search was fruitless.  Neither the bill analysis nor the tapes of committee hearings contain any reference at all to the subsection 9(c) fee.  Bill Analysis, H.B. 504, 71st Leg. (1989).

Second, determination of legislative intent focuses, not on an individual legislator, but on the legislature as a whole:

> A statute is an act of the legislature as an organized body, and expresses the collective will of that body.  No single member can be heard to say what the meaning of a statute is.  It must speak for and be construed by itself.

Commissioners' Court of  El Paso  County v.  El Paso  County
Sheriff's Deputies Ass'n, 620 S.W.2d 900, 902 (Tex.  Civ.
App. - El  Paso 1981, writ  ref'd n.r.e.).  Sutherland  sets
forth the following  rule:  "Postpassage  remarks by  legis-
lators,  however  explicit,  cannot  serve  to  change  the
legislative intent expressed prior to an act's passage." 2A
Sands, Sutherland  Stat.  Const. § 48.15  (4th  ed.  1984).
Therefore, we cannot consider  the letters submitted by  the
bill's legislative sponsors.

We conclude that the fee authorized by subsection  9(b)
of House Bill  504 reaches  all persons required  to hold  a
permit as a distributor of motor fuels under chapter 153  of
the Tax  Code for  whom services  are performed  under  that
subsection.  We further conclude that the fee authorized  by
subsection 9(c) of House Bill 504 reaches only those dealers
of motor fuel, as defined  in the act, that contain  ethanol
or methanol in certain specified amounts.

### S U M M A R Y

The fee authorized by subsection 9(b) of
House Bill 504  reaches all persons  required
to hold a  permit as a  distributor of  motor
fuels under chapter 153  of the Tax Code  for
whom services are  performed under that  sub-
section. The  fee authorized  by  subsection
9(c) of  House Bill  504 reaches  only  those
dealers of motor fuel, as defined in the act,
that contain ethanol or methanol.

Very truly yours

JIM  MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jim Moellinger
Assistant Attorney General